# In The Matter Of:

*S. STEVEN MAESE*

*v.*

*SOUTH JORDAN CITY*

*Case No. 2:21-cv-0562-DBB-CMR*

Andrew Thompson

March 2, 2022





1872 South Main Street
Salt Lake City, Utah 84115
801.484.2929
www.QAreport.com

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION
_____

S. STEVEN MAESE,          )
                          )
      Plaintiff,          )
                          ) Case No. 2:21-cv-0562-DBB-CMR
vs.                       )
                          ) District Judge:
SOUTH JORDAN CITY,        ) Howard C. Nielson, Jr.
OFFICER JOHNNY            )
SERRANO, OFFICER          ) Magistrate Judge:
ANDREW THOMPSON, AND      ) Cecelia M. Romero
OFFICER DOES 1-10,        )
                          )
      Defendants.         )


_____

 VIDEOCONFERENCE DEPOSITION OF:  ANDREW E. THOMPSON

                 MARCH 2, 2022

            2:51 P.M. TO 3:41 P.M.


              Witness Location:
        1600 West Towne Center Drive
         South Jordan, Utah 84095

    Reporter:  Jill S. Nielsen, RPR, Notary Public

```
 1                        APPEARANCES

 2   PRO SE:

 3        S. STEVEN MAESE
          3892 West Coastal Dune Drive
 4        South Jordan, Utah 84009
          801.690.6960
 5        steven.maese@gmail.com
          (Appearing via videoconference)
 6

 7   FOR THE DEFENDANTS:

 8        R. SCOTT YOUNG, ESQ.
          Snow, Christensen & Martineau
 9        10 Exchange Place, Suite 1100
          P.O. Box 45000
10        Salt Lake City, Utah 84111
          801.521.9000
11        rsy@scmlaw.com
          (Appearing via videoconference)
12

13   ALSO PRESENT:

14        EDWARD R. MONTGOMERY, ESQ.
          South Jordan City Attorney's Office
15        1600 West Towne Center Drive
          South Jordan, Utah 84095
16        801.254.3742
          emontgomery@sjc.utah.gov
17        (Appearing via videoconference)

18
     ALSO PRESENT:
19
          Libby Lowther (Appearing via videoconference)
20

21

22

23

24

25
```

```
 1                              INDEX

 2    EXAMINATION OF ANDREW E. THOMPSON:              PAGE

 3    By Mr. Maese                                    4, 33

 4    By Mr. Young                                     31

 5
                             EXHIBITS
 6                                                  INITIAL
      NUMBER                                        REFERENCE
 7
      Exhibit 1      Body Cam Video, Defendants'       6
 8                   705 (Retained by Mr. Maese
                     and Mr. Young)
 9
      Exhibit 2      Defendants' Responses to         16
10                   Maese's Interrogatories and
                     Production of Documents
11
      Exhibit 3      Defendants' Responses to         17
12                   Maese's Requests for
                     Admissions
13

14    (Exhibits 2 and 3 provided electronically to the
      court reporter.)
15

16

17

18

19

20

21

22

23

24

25
```

```
 1                 P R O C E E D I N G S
 2                 ANDREW E. THOMPSON,
 3   having been first duly sworn to tell the truth,
 4   testified as follows:
 5                    EXAMINATION
 6   BY MR. MAESE:
 7        Q.   Good afternoon.
 8        A.   Good afternoon.
 9        Q.   Mr. Thompson, would you state your name
10   for the record.
11        A.   Andrew Elton Thompson.
12        Q.   Could you spell that, please.
13        A.   A-n-d-r-e-w E-l-t-o-n T-h-o-m-p-s-o-n.
14        Q.   On September 25, what was your
15   occupation?
16        A.   I was a police officer for South Jordan
17   City.
18        Q.   All right.  Do you happen to recall --
19             MR. YOUNG:  Do you want to just clarify
20   the year?
21             MR. MAESE:  I'm sorry; didn't I say
22   2019?
23             MR. YOUNG:  Okay.
24        Q.   (BY MR. MAESE)  On September 25, 2019,
25   you were a police officer for South Jordan City; is
```

1  that correct?

2      **A.   Yes.**

3      Q.   Perfect.

4           Do you happen to recall that evening?

5      **A.   Yeah, I recall it.**

6      Q.   Okay.  Do you recall being called out

7  onto a domestic violence call at 3892 West Coastal

8  Dune Drive?

9      **A.   Yes.**

10     Q.   Okay.  About how long was it between

11  the time you arrived and that you tried to make

12  contact with me?

13     **A.   I am not sure.**

14     Q.   If I told you that there was a body cam

15  from Officer Johnny Serrano and it shows about 15

16  minutes elapsing between the time that he turned on

17  his video camera and the time that you knocked on the

18  door, would that sound reasonable to you?

19          MR. YOUNG:  Objection.

20     **A.   Reasonable --**

21          MR. YOUNG:  Hold on.

22          The video speaks for itself.

23          You can answer.

24     **A.   Reasonable as far as what?  I don't**

25  **know what you're --**

```
 1          Q.   (BY MR. MAESE)  All right.  We'll just

 2   show the video if that's -- if that's -- I'm just

 3   trying to give a foundation that this is -- this is

 4   what happened.

 5          A.   Okay.

 6               MR. MAESE:  Scott, can you cue that up

 7   to about 15 minutes, 705, and we'll do this as

 8   Exhibit 1 to this deposition?

 9               MR. YOUNG:  Yeah.  Just give me one

10   second.

11               MR. MAESE:  Thank you.

12               MR. YOUNG:  And where do you want me to

13   tee it up to, Steve?

14               MR. MAESE:  Just to 15 minutes, 14:45.

15               MR. YOUNG:  Sorry; have I shared

16   screen?

17               MR. MAESE:  No.

18               MR. YOUNG:  My fault.  Okay.  It's cued

19   up, Defendants' 705 cued up at 14:46.

20               Do you want me to play it, Steve?

21               MR. MAESE:  Yeah, go ahead.

22               (The video was played.)

23               MR. MAESE:  Okay.  You can pause.

24               MR. YOUNG:  (Complied.)

25          Q.   (BY MR. MAESE)  All right,
```

S. STEVEN MAESE v.                                    Andrew Thompson
SOUTH JORDAN CITY                                        March 2, 2022

```
 1   Mr. Thompson.  You see in the lower left-hand corner
 2   the time stamp is at 14:54.  Is that your voice that
 3   you hear?
 4         A.   Yes, that is my voice.
 5         Q.   Okay.  Does this seem to be an accurate
 6   recollection, then, of -- or an accurate recording of
 7   that evening?
 8         A.   Sir, I'm not sure what you're asking
 9   me, an accurate --
10         Q.   I'm asking, what you're viewing on the
11   screen right now --
12         A.   I can see -- I can see that it says 14
13   minutes and 54 seconds, but what is your question
14   about it?
15         Q.   Does this seem to be an accurate
16   recording --
17         A.   Yes.
18         Q.   -- of that evening?
19         A.   Of this part of the evening, yes.
20         Q.   Right.  Up until this point, correct.
21   Up to this point.  Not -- not things that happened
22   after this, but --
23         A.   There were things before.
24         Q.   Well, at least not anything -- 14
25   minutes and 54 seconds before.  So we do have a
```

1  recording that is -- if you'd like, we can review the

2  entire recording to make sure that it's accurate.

3  Would you like that?

4        **A.   I don't know what you're asking me.**

5  **You asked me a question, and I'm not sure what you**

6  **are asking me, so I don't know how to answer you.**

7        Q.   I'm just asking you if it seems to be

8  accurate.

9        **A.   This recording?**

10       Q.   Correct.

11       **A.   Yes.**

12       Q.   Thank you.

13            So you arrived on scene at least 15

14  minutes before knocking on the door; is that correct?

15       **A.   It was before I knocked on the door.**

16  **How long that was, I don't know.**

17            MR. MAESE:  Scott, could you skip to

18  the very beginning of this, please.

19       Q.   (BY MR. MAESE)  Have you reviewed any

20  documents to prep for today?

21       **A.   I've reviewed all the documents.  I've**

22  **watched all the video that are -- are possible.**

23            **What I'm trying to tell you, sir, is I**

24  **don't know how long I was on scene before this video**

25  **started.  But you're not asking the questions to get**

S. STEVEN MAESE v.                                    Andrew Thompson
SOUTH JORDAN CITY                                    March 2, 2022

1    the correct answers.

2          Q.   Okay.  Well, I'm asking you, were you

3    on scene for at least 15 minutes before knocking on

4    the door?

5          A.   I -- I don't know how long I was on

6    scene before I knocked on the door.

7          Q.   Okay.  Well, here is the -- here is the

8    video starting at zero, and you saw when we got to

9    14:54.  This doesn't include the time it took you to

10   get out of your car and get to this position.  I'm

11   assuming that was longer than six seconds.

12         A.   Okay.

13         Q.   So if that's the case, were you on

14   scene for at least 15 minutes before knocking on my

15   door?

16         A.   Yes.

17         Q.   Thank you.

18              In those 15 minutes before knocking on

19   my door, did you observe any indications in the house

20   that someone was in the house?

21         A.   So due to what we had talked about

22   before this scene and the meeting we had with

23   different officers, we were just concerned for safety

24   and who could possibly be in the home due to the

25   circumstances around that as far as, like, you know,

1   **the severity of the crime, your criminal history,**

2   **some stuff like that.**

3          Q.   Well, okay.  Let's talk about that.

4   That's a good digression.

5              What criminal history did I have at

6   that point?

7          **A.   There was -- so there was indications**

8   **of a criminal history as far as there were some**

9   **filings for domestic assault, weapons charge.  We**

10  **also found, like, an active protective order.**

11         Q.   So no.  So what -- again, let me -- let

12  me ask the question, and please listen to it

13  carefully.  I want you to answer the question that

14  I'm asking.

15         **A.   Yes.**

16         Q.   What criminal history did I have at

17  that point?

18              MR. YOUNG:  Objection.  Asked and

19  answered.

20              You can answer again.

21         **A.   So the criminal history, when I search**

22  **it, I don't think it looks the way that you're**

23  **thinking it looks, sir.**

24              **It will show me every charge that was**

25  **ever filed against you, whether you were found**

1    **guilty, whether you disputed those charges or not.**

2    **It's still part of your criminal history.  Even if**

3    **it's been expunged, it's still in there.  It's still**

4    **seen.**

5            Q.   (BY MR. MAESE)  So -- well, I'm glad

6    you brought this up.  What -- what specific program

7    are you talking about?  Are you talking about

8    Spillman?

9            **A.   No.  The UCJIC, Utah Criminal Justice**

10   **Information Center.  UCJIC is what it's called.**

11           Q.   And you're saying that UCJIC contains

12   expunged records?

13           **A.   Yes.  It will show me everything that**

14   **was ever filed against you, whether that filing is**

15   **still in the system or has been removed or not.  It's**

16   **still there.**

17           Q.   Interesting, interesting.

18           **A.   I agree.**

19           Q.   Well, I don't think that's accurate.  I

20   happen to know that's inaccurate, but . . .

21           **A.   Okay.**

22           Q.   What about Spillman?  Do you guys use

23   Spillman technology?

24           **A.   Some of us.  At that time, we used**

25   **Spillman as a -- as a dispatching service.  And as**

1  far as our records and stuff like that for

2  report-writing was concerned, we use Spillman.

3              A lot of us didn't use Spillman to

4  search criminal history and stuff like that.  It

5  didn't work very well.

6          Q.   Did you use Spillman to search criminal

7  histories?

8          A.   Do I or did I?

9          Q.   Did you, correct.

10         A.   No, I do not.  I did not use Spillman

11 regularly to --

12         Q.   So -- so you would not have -- you

13 would not have looked in Spillman for any records

14 regarding me that evening?

15         A.   So that evening, I did not search you

16 at all, sir.

17         Q.   Okay.

18         A.   I did not do any of that.

19         Q.   Okay.

20         A.   I didn't use Spillman at all.

21         Q.   Okay.  So then how were you aware of

22 any criminal history I may have if you didn't perform

23 any searches?

24         A.   Because I was told about it.

25         Q.   And who were you told this by?

1        **A.   It's a good question.  I'm not quite**

2   **sure.  When we met before we went to your house, as a**

3   **group of officers, we discussed kind of the tactical**

4   **plan and how we were going to approach it.**

5             **And someone had searched your**

6   **information and informed the rest of us, but I'm not**

7   **sure anymore which officer it was.  I couldn't**

8   **recall.**

9        Q.   So what were you told that was -- that

10  was my criminal history at that point?

11       **A.   The same thing I told you earlier, that**

12  **you had domestic assault charges, weapon charges, and**

13  **there was an active protective order in your name,**

14  **stuff like that.**

15       Q.   Was that the entirety that you can

16  remember?  Can you remember anything else?

17       **A.   That's just what I remember off the top**

18  **of my head.**

19       Q.   No, it's perfectly reasonable.  Two

20  years ago, and at the time, I'm sure you had no

21  reason to make extra note of it.

22            So back to being at the house.  In the

23  15 minutes that are documented on that video, at

24  least 15 minutes that you were there in front of my

25  house, did you observe any indications in front of my

S. STEVEN MAESE v.                                      Andrew Thompson
SOUTH JORDAN CITY                                        March 2, 2022

```
 1   house -- not record searches, not hearsay from other
 2   officers -- did you personally observe anything that
 3   would lead you to believe that there was anyone in
 4   the house?
 5        A.   Sorry; I'm just trying to recall.  I
 6   remember your house was very dark.  There wasn't even
 7   a light on on the porch.  I don't think so.
 8        Q.   Did you hear any noises?
 9        A.   Not until you came down to answer the
10   door.
11        Q.   Okay.  Perfect.  Perfect.
12             All right.  So you were told all of
13   this stuff about criminal history at a -- before --
14   where you were doing your tactical planning meeting
15   to get to the house.
16        A.   Okay.
17        Q.   Did you talk quite a bit with the
18   officers that were on scene that night?
19        A.   Yes.
20        Q.   You communicated a lot about the case
21   itself?
22        A.   Yeah.  We always communicate on all the
23   scenes that we're on.
24        Q.   All right.  All right.  And does
25   that -- does that hold true for even after you leave
```

1   the scene?  Do you ask about follow-ups of the case

2   and what happens?

3          **A.    Follow-ups afterwards?**

4          Q.    Yeah.  I mean -- yeah.  I mean, are

5   there any supplemental narratives that you have to

6   write?  Anything you talk about with other officers

7   just to get -- you know, make sure everything is, you

8   know --

9          **A.    Typically, when the case is done and**

10  **I've left, I -- I don't ask about it or follow up**

11  **with it or anything like that, unless I was the**

12  **initial officer.  That's the only reason that would**

13  **change.**

14         Q.    Okay.  Were you the initial officer

15  that night?

16         **A.    No, I was not.**

17         Q.    All right.  You were a backup officer?

18         **A.    Yes.**

19         Q.    All right.  Okay.  When did you learn

20  that officers who had been in my home had found

21  firearms?

22         **A.    Sorry; I'm just going back through my**

23  **recollection because I was the officer who**

24  **transported you back to South Jordan.**

25                **I'm not quite sure.  I know I was made**

S. STEVEN MAESE v.                                    Andrew Thompson
SOUTH JORDAN CITY                                        March 2, 2022

1    aware of it, but I'm not sure when I was told.  I do

2    not recall.

3          Q.   Okay.  Do you realize that in an

4    interrogatory, a written question to you, you had --

5    you had stated that you learned about officers

6    found firearms in my home before you ever came to my

7    home?

8          A.   Before I came to your home, I knew that

9    there were weapons found in your home?

10          Q.   That's what you wrote.  Would you like

11   to see your answer to your interrogatory?

12          A.   I -- sure, I'd love to see it.  I don't

13   know what you're talking about.

14               MR. MAES:  Hold on one second, Scott,

15   before you go.

16          Q.   (BY MR. MAESE)  Have you not been

17   given -- have you not signed off on the answers that

18   you gave to interrogatories?

19          A.   Of course I have.  Yes.

20          Q.   Okay.  And you answered them and --

21          A.   I'm saying that we -- no one had seen

22   the weapons in your home to know they -- they were in

23   your home because --

24          Q.   Believe me, I totally agree.  I've gone

25   over this question, and I was baffled myself by the

```
 1   answer.  But I just want to make sure it's there.

 2                 MR. MAESE:  Scott, do you have that at

 3   your fingertips, by chance?

 4                 MR. YOUNG:  Yeah.  Just give me one

 5   second.

 6                 MR. MAESE:  All right.  Thank you.

 7                 MR. YOUNG:  Which interrogatory is it?

 8                 MR. MAESE:  I don't know.  There were

 9   only like three or four.  I mean, there weren't that

10   many interrogatories.

11                 MR. YOUNG:  Let me see if I can find

12   it.  I think there were only two.  I'll share the

13   screen.  You told me if I'm --

14                 MR. MAESE:  Yeah, there might have been

15   only two.

16                 MR. YOUNG:  So here's the first one

17   (indicating).

18                 MR. MAESE:  No, it's the second one.

19                 MR. YOUNG:  This one (indicating)?

20                 MR. MAESE:  Yep.  No, no, no, no.  It

21   wasn't -- well, maybe it was an admission; although,

22   that's --

23                 MR. YOUNG:  It's a different document.

24   Give me a second.  I can pull that up.

25                 MR. MAESE:  Yeah.
```

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Andrew Thompson
March 2, 2022

```
 1            MR. YOUNG:  Is it this Request for
 2   Admission Number 1?
 3            MR. MAESE:  Yes, it is, it is.
 4        Q.   (BY MR. MAESE)  I'm sorry, I had that
 5   mistaken, Mr. Thompson.
 6            MR. MAESE:  Thank you very much.
 7        Q.   (BY MR. MAESE)  So I asked you to admit
 8   that you had heard from other sworn officers that
 9   firearms were found home in the Coastal Dune home
10   during the security sweep.  You denied that.
11            "Officer Thompson learned that firearms
12   were in the home when the officers discussed how to
13   approach Mr. Maese and take him into custody."
14            So I take the answer to that as being,
15   up until the point of this request, you had never
16   heard from other sworn officers that firearms were
17   found in the Coastal Dune home.
18            What you're telling me now is that you
19   did, in fact, hear that officers searching my home
20   had found firearms; is that correct?
21            MR. YOUNG:  Objection.  Compound,
22   misstates the document and the answer and the source
23   of the answer.
24            You can answer.
25        A.   I -- I'm confused as far as your
```

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Andrew Thompson
March 2, 2022

1   question.  What are you asking me?  Ask again.

2   I'm -- I'm not sure what you're trying to get an

3   answer to.

4        Q.   (BY MR. MAESE)  You heard from other

5   officers that firearms were found in my home during

6   the security sweep?

7        A.   Yes.

8        Q.   Perfect.

9             When did you hear that?

10       A.   I am not sure.

11       Q.   Mr. Thompson, I understand that you've

12   recently been terminated from South Jordan; is that

13   correct?

14       A.   Yes, that is true.

15       Q.   What has South Jordan told you is the

16   reason for your termination?

17       A.   So the reason that they determined, it

18   was due to misuse of sick leave and not staying in

19   proper contact with my supervisors.

20       Q.   By "misuse," does that mean dishonesty?

21       A.   No, it does not.

22       Q.   Well, please explain to me what -- by

23   "misuse" -- what that means, what "misuse" means.

24       A.   Okay.  It's a bit of a long story.

25   I'll try and keep it short.

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Andrew Thompson
March 2, 2022

```
 1            Q.   We've got an hour and a half.

 2            A.   Okay.

 3            Q.   We've got plenty of time.

 4            A.   So I was injured while attending motor

 5       school.  And due to the injuries that I had, I could

 6       not return to work.  And through a whole bunch of

 7       other appointments, I was at home and not able to

 8       work.

 9                 And then when I was finally able to

10       return to work and get proper notification from my

11       doctor, I gave that to South Jordan, and they felt

12       that I was home longer than I should have been.

13       That's pretty much it.

14            Q.   So they -- again, I'm not asking you to

15       admit or deny anything in regards to this case.  I'm

16       sure you're probably appealing it or whatever.  But

17       they've told you that they believe that your -- the

18       length of your stay exceeded what the doctor

19       permitted for your actual injury?

20            A.   No.  They told me -- they told me that

21       that was the reason for firing me.

22            Q.   Correct.  They told you that the reason

23       they fired you is because they believed you stayed on

24       leave longer than you should have, longer than the

25       doctor said was needed -- necessary?
```

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Andrew Thompson
March 2, 2022

1      A.   Not longer than the doctor.  Longer
2  than they felt I should have.
3      Q.   Okay.  Longer than they felt was
4  necessary?
5      A.   Yes.
6      Q.   Okay.  Perfect.
7           All right.  Have you been subject to --
8           MR. MAESE:  I'm sorry; did someone say
9  something?
10          MR. YOUNG:  No.
11     Q.   (BY MR. MAESE)  Have you been subject
12  to discipline before regarding honesty?
13     A.   Yes.
14     Q.   Could you please describe that.
15     A.   I'll do my best.  It was quite a while
16  ago.  I'm not even sure the date anymore.  I became
17  an officer in 2007, and it was a few years after
18  that.
19          I had been going through some rough
20  patches at -- with my home life, and when my
21  supervisor called me, asking me why I was late to
22  work, I tried to come up with an excuse for not
23  responding to work because of the mental situation I
24  was in.  And that was construed as dishonesty, and
25  that's what that's all about.

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Andrew Thompson
March 2, 2022

```
 1          Q.    Were you placed on any Brady List
 2    because of that?
 3          A.    Yep.  I'm on a Brady List for it, yes.
 4    The courts all know it.  I signed all the documents
 5    for it.
 6          Q.    All right.  And was this decision to
 7    terminate -- was that -- was the prior discipline
 8    taken -- has South Jordan told you that the prior
 9    discipline was taken into account when making this
10    decision to terminate you?
11          A.    All of my prior discipline was taken
12    into account.
13          Q.    Okay.  Including the honesty?
14          A.    All of it.
15          Q.    Okay.
16          A.    Anything that has ever been in my
17    disciplinary file, they took that into account.
18          Q.    All right.  Before this latest
19    incident, when was the last time you were
20    disciplined?
21          A.    I do not recall exactly, but a few
22    years.
23          Q.    Okay.
24          A.    I'm not sure.
25          Q.    So a good period of time?
```

S. STEVEN MAESE v.                                Andrew Thompson
SOUTH JORDAN CITY                                    March 2, 2022

```
 1          A.    Yes.

 2          Q.    Multiple years?

 3          A.    Yes.

 4          Q.    All right.  When you were drafting the

 5    warrant for my home --

 6          A.    Okay.

 7          Q.    -- had you been told that firearms were

 8    found in my home by officers doing the security

 9    sweep?

10          A.    I do not recall.  Honestly, I'm just

11    not sure.  When I drafted your warrant, I was sitting

12    in my car right in front of your home, but I'm not

13    sure when I was told that.

14          Q.    Okay.  So you submitted that warrant at

15    approximately 6:00 in the morning.

16          A.    Okay.

17          Q.    Okay.  And so if you were in your

18    car -- I didn't know you were in your car.  Would you

19    have heard that the firearms were found in my home at

20    the station?  Do you recall if you were at the

21    station when you first heard?

22          A.    I don't -- I don't recall.

23          Q.    Okay.

24          A.    I'm unsure.

25          Q.    Okay.  All right.  Have you been
```

 1   trained regarding warrants, and honesty regarding

 2   warrants or material omissions in warrants?

 **3**       **A.   Of course.**

 4       Q.   And what have you been trained?  What

 5   have they taught you?

 **6**       **A.   They've taught me lots of stuff, sir.**

 **7**   **You're asking for a lot of --**

 8       Q.   What have they taught you regarding

 9   honesty and material omissions in warrant

10   applications?

**11**       **A.   You are asking me to recall stuff that**

**12**   **I was taught many years ago, sir.**

13       Q.   You're right, I am, because it's

14   something you use in your job regularly, obviously,

15   because you submitted a warrant for -- for my house.

16   So, yes, I am absolutely asking -- and if your answer

17   is you don't recall, you don't remember, that's

18   satisfactory.  I can't -- I can't make you remember

19   something.

20           But if you don't remember what your

21   training was regarding lies and material omissions,

22   that's the case, you don't recall.

**23**       **A.   As far as lying in a -- in a -- in a**

**24**   **warrant or an application for a warrant, the**

**25**   **affidavit for it, of course you can't lie.  Like,**

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Andrew Thompson
March 2, 2022

1   that's -- that's common knowledge.

2          Q.   Well, why can't you lie?  What's the

3   explanation given as to what -- why you can't lie?

4   What does it mean if you lie?

5          A.   Because the judge needs to know the

6   truth of the facts so that he can make a good

7   determination on the warrant.

8          Q.   Okay.  What about material omissions?

9          A.   I -- I don't know.

10         Q.   Okay.  That's a fair -- that's a fair

11  enough answer.  That's a fair enough answer.

12              Have you ever been disciplined

13  regarding civil rights violations?

14         A.   No, I don't think so.

15         Q.   Are you aware of anybody in the

16  department who's been disciplined for civil rights

17  violations?

18         A.   No.  But that's normal.  We don't

19  really know about other people's discipline very

20  often.

21         Q.   Well, I guess it depends on the

22  severity of the discipline?

23         A.   Depends on the severity of the

24  discipline, but most of that is kept pretty

25  hush-hush.

```
 1          Q.   Is there a policy -- are you aware of a
 2   policy with South Jordan PD regarding discipline for
 3   civil rights violations?
 4               MR. YOUNG:  Foundation.
 5               You can answer.
 6          A.   I -- I know there's a policy for it.
 7   What's -- what's your question?  Just that I know
 8   that there's a policy?
 9          Q.   (BY MR. MAESE)  Yeah.  I just -- I
10   don't know if there's a policy.  That's why we have
11   these depositions, so we can find these things out.
12               And what is that policy?  Just give me
13   a synopsis.
14          A.   I do not know the exact policy.
15          Q.   What is your understanding of the
16   policy?
17          A.   My understanding of the policy?
18          Q.   Correct.
19          A.   That we can't violate people's civil
20   rights.
21          Q.   And what are the consequences if do you
22   violate people's civil rights?
23          A.   You would be violating policy and could
24   be held, you know, to disciplinary action.
25          Q.   Okay.  Were you disciplined for
```

S. STEVEN MAESE v.                                      Andrew Thompson
SOUTH JORDAN CITY                                          March 2, 2022

```
 1   anything that happened on the night of the 25th --

 2        A.    No.

 3        Q.    -- of 2019?

 4        A.    No.

 5        Q.    Are you aware of any officer who was

 6   disciplined for the anything on the night of the

 7   25th -- September 25, 2019?

 8        A.    No.

 9        Q.    All right.  What time did your shift

10   end on the 25th?

11        A.    It would typically have ended at 6 a.m.

12        Q.    Okay.  And so do you recall staying

13   after your shift to execute the search warrant?

14        A.    I -- I don't recall.  I could have

15   stayed late, but I don't recall if I did or not.

16        Q.    Okay.

17        A.    It's common practice for me to stay

18   after my shift and -- to finish work, whatever it

19   was, so . . .

20        Q.    To finish your assignment on a

21   particular case?

22        A.    Yes.

23        Q.    Okay.  Fair enough, fair enough.

24             And would you have -- as soon as you

25   were done executing that search warrant, would you
```

```
 1  have ended your shift, because it would have been

 2  overtime?

 3          A.   I -- not necessarily.  And I'm -- I

 4  don't recall.

 5          Q.   That's fair enough.  That's fair

 6  enough.

 7               Did you find out that officers had

 8  found firearms in my home before you entered my home

 9  on the search warrant?

10          A.   I did not enter --

11               MR. YOUNG:  Objection.  Asked and

12  answered.

13               You can answer.

14          A.   I did not enter your home on the search

15  warrant.

16          Q.   (BY MR. MAESE)  Okay.  But you were

17  there in front of my house entering the application

18  for the search warrant?

19          A.   Yes.

20          Q.   And did you wait until there was an

21  answer received on the search warrant?

22          A.   What do you mean, "wait"?

23          Q.   So I'm assuming that you did the

24  electronic warrant system.  You put it in, and that

25  however long, whether it's 30 seconds or 30 minutes
```

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Andrew Thompson
March 2, 2022

1   or 30 days, a judge comes back and says yes or no on

2   the warrant.

**3       A.   Yes.**

4       Q.   Did you wait for that decision on the

5   warrant?

**6       A.   Yes.**

7       Q.   In front of my house?

**8       A.   Yes.**

9       Q.   Okay.  Why did you -- why were you in

10  front of my house to do the application for the

11  warrant if you didn't actually enter my home on the

12  warrant?

**13      A.   Because I was handing it over to**

**14  detectives who were on scene.**

15      Q.   Okay.

**16      A.   I had a printer in my car, and they**

**17  don't.**

18      Q.   Okay.  That's fair enough.  Fair

19  enough.

20           And you don't recall what happened

21  after the warrant was issued?

**22      A.   No, I do.**

23      Q.   Okay.  What happened?

**24      A.   I handed the warrant to detectives.**

**25  They went and served the warrant, did their --**

S. STEVEN MAESE v.                                    Andrew Thompson
SOUTH JORDAN CITY                                         March 2, 2022

 1  **whatever they did, and I left the scene after that.**

 2          Q.   Did you wait for them to complete their

 3  search of my home before you left, or did you just

 4  leave once you handed it off?

 5          **A.   No.   I left soon after I handed it to**

 6  **them.**

 7          Q.   Okay.   So it's reasonable to believe

 8  that you heard that firearms were found in my home

 9  before you handed off the search warrant to the

10  detectives?

11          **A.   It's possible, but I don't recall.**

12          Q.   Okay.   All right.   Fair enough.

13              MR. MAESE:   I think that's it.

14              MR. YOUNG:   Okay.   Let's take a quick

15  break.   I'll see if I've got anything.

16              MR. MAESE:   All right.   Sounds good.

17              (Recess from 3:21 p.m. to 3:28 p.m.)

18              MR. YOUNG:   Okay.   Steve, do you have

19  one more?

20              MR. MAESE:   I've learned my lesson.

21  Only two out of three.

22              MR. YOUNG:   Just giving you a hard

23  time.   I have a couple of questions.

24                   *     *     *     *

25                   *     *     *     *

S. STEVEN MAESE v.                                    Andrew Thompson
SOUTH JORDAN CITY                                        March 2, 2022

```
 1                    EXAMINATION

 2   BY MR. YOUNG:

 3        Q.   Officer Thompson, do you recall any

 4   discussion at the Holiday Oil before you and the

 5   other officers go to Mr. Maese's home about whether

 6   Mr. Maese possessed firearms?

 7        A.   Yes, I do.

 8        Q.   Can you just describe what you remember

 9   of that discussion?

10        A.   Yes.  So I know it was part of, like,

11   the -- the briefing or tactical briefing that we were

12   doing when we were coming up with a plan as far as we

13   talked about his criminal history, protective order,

14   all that kind of stuff that was there.

15             We also talked about the possibility of

16   him possessing weapons.  I think that was part of the

17   criminal history search and the background that we

18   did with him.  We knew that he had possessed them

19   in the past is what we were -- we were told on

20   scene.

21        Q.   Okay.  And you remember a few minutes

22   ago Mr. Maese was asking you about items that you

23   include or omit in a search warrant affidavit.  Do

24   you recall that?

25        A.   Yes, I do.
```

S. STEVEN MAESE v.                                  Andrew Thompson
SOUTH JORDAN CITY                                      March 2, 2022

```
 1          Q.   He asked you about material omissions.
 2    Is it fair to say that your practice is to include
 3    all evidence that's material to whether or not a
 4    search warrant should be issued so that a judge can
 5    consider everything?
 6          A.   Yes, that is true.
 7          Q.   Okay.
 8          A.   When he asked me the question, I was
 9    kind of confused about how it was asked -- what I was
10    being asked.
11               When you write a warrant, you have to
12    complete -- it's almost like a summary of all the
13    facts of finding about the case.  Whether it's good
14    or bad, you have to include it all in there so the
15    judge can make a proper decision.
16          Q.   It's your pattern and practice -- if I
17    tell you the word "material" is essentially important
18    or big facts -- to not omit any important or big
19    facts in a search warrant affidavit?
20          A.   Yes, that is true.
21          Q.   Okay.  And you didn't omit any big
22    facts in this case, did you?
23          A.   No, no.  I put everything in there I
24    had.
25               MR. YOUNG:  Okay.  I don't have
```

S. STEVEN MAESE v.                                    Andrew Thompson
SOUTH JORDAN CITY                                       March 2, 2022

```
 1    anything else.
 2              MR. MAESE:  I do.  I have a little
 3    redirect.
 4              Ready, Jill?
 5              THE REPORTER:  Ready.
 6              MR. MAESE:  All right.
 7                   EXAMINATION
 8    BY MR. MAESE:
 9         Q.  Officer -- or Mr. Thompson?
10         A.  Yes.
11         Q.  You were aware that officers had
12    performed a security sweep on the house?  Regardless
13    of what they found, you were aware they were entering
14    my home, correct?
15         A.  No.
16         Q.  When did you learn of that?
17         A.  At some point later in the night.  I'm
18    not sure when.  I -- I took you into custody and left
19    before the officers even made that decision to do the
20    protective sweep.
21         Q.  Oh, actually, you didn't.  There's body
22    cam there.  Basically, I don't even know if you made
23    it to your car by the time they did the protective
24    sweep.  But maybe you haven't seen that body cam
25    footage yet.
```

S. STEVEN MAESE v.                                Andrew Thompson
SOUTH JORDAN CITY                                    March 2, 2022

```
 1          A.   I have seen it.  I have seen it.
 2          Q.   Okay.  Well, then why don't we cue that
 3   up real quickly just so we can understand what
 4   happened.
 5               MR. MAESE:  Hey, Scott, if you could go
 6   back to that 705.
 7               MR. YOUNG:  Where do you want it cued
 8   up, Steve?
 9               MR. MAESE:  Let's do it at like 16
10   minutes.  Or let's do it at like 17 minutes, see what
11   happens there.
12               MR. YOUNG:  Sorry; I keep forgetting to
13   share my screen.
14               Okay.  Should I start playing it?
15               MR. MAESE:  Yeah, go ahead.
16               (The video was played.)
17               MR. MAESE:  Sorry, let's cue it to
18   twenty minutes.
19               MR. YOUNG:  To what?  Twenty minutes?
20               MR. MAESE:  Twenty minutes even.
21               (The video was played.)
22               MR. MAESE:  Can you pause it for one
23   second, Scott?
24               MR. YOUNG:  (Complied.)
25          Q.   (BY MR. MAESE)  Officer Thompson, did
```

S. STEVEN MAESE v.                                    Andrew Thompson
SOUTH JORDAN CITY                                        March 2, 2022

```
 1  you review this video, which is Officer Serrano's

 2  body cam?

 3           A.    Yes.

 4                 MR. MAESE:  Okay.  Perfect.

 5                 Go ahead.  Let's keep playing.

 6                 (The video was played.)

 7                 MR. MAESE:  Okay.  Scott, would you

 8  pause it here?

 9                 MR. YOUNG:  Sure.

10           Q.    (BY MR. MAESE)  It looks like I left --

11  you've taken me at about 21 minutes to start -- we

12  start walking to your car.  At 21:15 is when it's

13  decided to do the protective sweep.

14                 MR. MAESE:  Can you fast-forward to the

15  very end of this, Scott?  Maybe about 15 seconds

16  before.

17                 MR. YOUNG:  (Complied.)

18                 MR. MAESE:  Go ahead.

19                 (The video was played.)

20                 MR. MAESE:  Go ahead and pause there,

21  Scott.

22                 MR. YOUNG:  (Complied.)

23           Q.    (BY MR. MAESE)  It looks like the

24  protective sweep is over at 29:17.  So were we still

25  in your car -- in your car eight minutes later after
```

1   you took me from the -- from the front porch?

2        A.   I'm not sure.  I'd have to look at

3   the video to be certain.  I know that we had a

4   conversation at the car and looked at videos from

5   your phone and stuff like that.  I'm not sure when we

6   left the scene.

7        Q.   Well, a minute ago you were very

8   confident that we had already left the scene before

9   the protective sweep started.  Would you care to

10  revise your answer?

11       A.   No, that's not what I said at all.

12  Hold on.

13            MR. YOUNG:  Objection.  Misstates

14  testimony.

15            You can answer, Andrew.

16       A.   That's not what I stated at all when I

17  answered the question.

18       Q.   (BY MR. MAESE)  What did you state?

19       A.   I said I was not there when they made

20  the decision and entered the home, which, by the

21  video, I obviously wasn't.  We'd already walked

22  away.

23       Q.   Right.  And didn't you say that you'd

24  already left the scene by the time they --

25       A.   No.  I -- all I said was that I was not

 1   **there when the decision was made.**

 2         Q.   Okay.  That's -- I would agree with

 3   that, that you weren't there when the decision was

 4   made; however, as you talked about earlier, it is

 5   normal practice to keep in communication with

 6   officers during an incident, correct?

 7         **A.   Yes.**

 8         Q.   That includes not necessarily

 9   face-to-face communication but also radio traffic,

10   correct?

11         **A.   Yes.**

12         Q.   So is it reasonable to believe that you

13   would have been told that officers had successfully

14   completed a protective sweep of the home either on

15   the radio or face to face before you wrote your

16   application?

17         **A.   No.**

18         Q.   That's not reasonable?

19         **A.   I don't -- I don't know when I received**

20   **that information.**

21         Q.   I didn't ask you when you received it.

22   I'm asking you if it's reasonable to believe that

23   that could happen.

24         **A.   It could happen.**

25         Q.   Okay.  It's --

1        **A.    I don't know when it did.**

2        Q.    Well, I understand you don't -- I

3    understand that for some reason you remember

4    everything else about this incident, but this

5    particular thing you're a little cloudy on.

6            But you previously said that your

7    standard practice is to keep in communication?

8            MR. YOUNG:  Objection.  Argumentative,

9    misstates testimony.

10           You can answer the question, but

11   the characterization about his memory is

12   inappropriate.

13       Q.    (BY MR. MAESE)  It's reasonable to

14   believe that, and would you put -- would you put, on

15   a warrant application, that officers had previously

16   searched the home?

17       **A.    If I had received that information for**

18   **the warrant?  Is that what you're asking?**

19       Q.    Correct, before you -- before you wrote

20   the warrant application.

21       **A.    If I had that information, in normal**

22   **circumstances -- you're just being hypothetical --**

23   **then, yes, I would have.**

24       Q.    Okay.  Now, you had actually cleared

25   this warrant before you submitted it with someone at

1    the DA's office, had you not?

2         **A.   Yes, I had.**

3         Q.   What were the contents of your

4    conversation with her?

5         **A.   It was actually very brief.**

6         Q.   Okay.  What was it?

7         **A.   I explained to her that we had a**

8    **domestic assault case, and I had an affidavit she**

9    **wanted -- I needed her to look through, and she**

10   **looked through it.  And that was about all I can**

11   **recall.  It wasn't very long.**

12        Q.   Okay.  So she didn't ask you about

13   any -- any omissions, if everything was complete?

14        **A.   I -- I don't recall.  All I can**

15   **recall is that the conversation we had was very**

16   **brief because I had woken her up in the middle**

17   **of the night.  So -- and then she reviewed it and**

18   **sent it back to me, and then I submitted it to a**

19   **judge.**

20             MR. MAESE:  All right.  I think that's

21   it.

22             MR. YOUNG:  One more?

23             MR. MAESE:  No, that's it.

24             MR. YOUNG:  Give me one second to kind

25   of look through my notes.  I want to make sure I

S. STEVEN MAESE v.                                      Andrew Thompson
SOUTH JORDAN CITY                                        March 2, 2022

```
 1    don't have any more.

 2                 MR. MAESE:  Okay.

 3                 (Recess from 3:38 p.m. to 3:41 p.m.)

 4                 MR. YOUNG:  I don't have anything.  So

 5    we can read and sign and be done.

 6                 WHEREUPON, the foregoing deposition was

 7    concluded at the hour of 3:41 p.m. on March 2, 2022.

 8                 (Exhibit 2 and Exhibit 3 were marked

 9    after the conclusion of the deposition.)

10                        *     *     *     *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Andrew Thompson
March 2, 2022

```
 1    Case:  Maese v. South Jordan City, et al.
      Date:  March 2, 2022
 2    Reporter:  Jill S. Nielsen, Q&A Reporting, Inc.
      1872 South Main Street, Salt Lake City, Utah 84115
 3
                     WITNESS CERTIFICATE
 4
            I, ANDREW E. THOMPSON, HEREBY DECLARE UNDER
 5    PENALTY OF PERJURY:  That I am the witness referred
      to in the transcript; that I have read the transcript
 6    and know the contents thereof; that with these
      corrections, I have noted this transcript truly and
 7    accurately reflects my testimony.

 8    PAGE    LINE    CHANGE/CORRECTION          REASON

 9    _____   _____   _____

10    _____   _____   _____

11    _____   _____   _____

12    _____   _____   _____

13    _____   _____   _____

14    _____   _____   _____

15    _____   _____   _____

16    _____   _____   _____

17    _____   _____   _____

18       _____    No corrections were made

19

20    Executed on this _____ day of _____, 2022.

21

22

23                    _____

24                    ANDREW E. THOMPSON

25
```

```
 1                    REPORTER'S CERTIFICATE

 2           I, JILL S. NIELSEN, do hereby certify that I

 3   am a Registered Professional Reporter and Notary

 4   Public; that previous to the commencement of the

 5   examination, the witness was duly sworn by me to

 6   testify to the truth.

 7           I further certify this deposition was taken

 8   in shorthand by me at the time and place herein set

 9   forth, and that it was thereafter reduced to

10   typewritten form, and that the foregoing constitutes

11   a true and correct transcript.

12           I further certify that I am not related to,

13   employed by, nor of counsel for any of the parties or

14   attorneys herein, nor otherwise interested in the

15   result of the within action.

16           IN WITNESS WHEREOF, I have hereunto affixed

17   my hand and seal this 10th day of March, 2022.

18

19           My commission expires July 7, 2023.

20

21

22

23   _____

24   JILL S. NIELSEN, RPR

25
```

**Exhibits**

**Exhibit 2.**
**Thompson**
  3:9 40:8
**Exhibit 3.**
**Thompson**
  3:11 40:8

**1**

**1**
  6:8 18:2
**10th**
  42:17
**14**
  7:12,24
**14:45**
  6:14
**14:46**
  6:19
**14:54**
  7:2 9:9
**15**
  5:15 6:7,14 8:13
  9:3,14,18 13:23,24
  35:15
**16**
  34:9
**17**
  34:10

**2**

**2**
  40:7,8 41:1
**2007**
  21:17
**2019**
  4:22,24 27:3,7
**2022**
  40:7 41:1,20 42:17
**2023**
  42:19
**21**
  35:11
**21:15**
  35:12

**25**
  4:14,24 27:7
**25th**
  27:1,7,10
**29:17**
  35:24

**3**

**3**
  40:8
**30**
  28:25 29:1
**3892**
  5:7
**3:21**
  30:17
**3:28**
  30:17
**3:38**
  40:3
**3:41**
  40:3,7

**5**

**54**
  7:13,25

**6**

**6**
  27:11
**6:00**
  23:15

**7**

**7**
  42:19
**705**
  6:7,19 34:6

**8**

**84115**
  41:2

**A**

**A-N-D-R-E-W**
  4:13
**a.m.**
  27:11
**absolutely**
  24:16
**account**
  22:9,12,17
**accurate**
  7:5,6,9,15 8:2,8
  11:19
**accurately**
  41:7
**action**
  26:24 42:15
**active**
  10:10 13:13
**actual**
  20:19
**admission**
  17:21 18:2
**admit**
  18:7 20:15
**affidavit**
  24:25 31:23 32:19
  39:8
**affixed**
  42:16
**afternoon**
  4:7,8
**agree**
  11:18 16:24 37:2
**ahead**
  6:21 34:15 35:5,18,
  20
**Andrew**
  4:2,11 36:15 41:4,
  24
**answers**
  9:1 16:17
**anymore**
  13:7 21:16
**appealing**
  20:16
**application**

24:24 28:17 29:10
37:16 38:15,20
**applications**
  24:10
**appointments**
  20:7
**approach**
  13:4 18:13
**approximately**
  23:15
**Argumentative**
  38:8
**arrived**
  5:11 8:13
**assault**
  10:9 13:12 39:8
**assignment**
  27:20
**assuming**
  9:11 28:23
**attending**
  20:4
**attorneys**
  42:14
**aware**
  12:21 16:1 25:15
  26:1 27:5 33:11,13

**B**

**back**
  13:22 15:22,24
  29:1 34:6 39:18
**background**
  31:17
**backup**
  15:17
**bad**
  32:14
**baffled**
  16:25
**Basically**
  33:22
**beginning**
  8:18
**believed**
  20:23
**big**

32:18,21
**bit**
  14:17 19:24
**body**
  5:14 33:21,24 35:2
**Brady**
  22:1,3
**break**
  30:15
**briefing**
  31:11
**brought**
  11:6
**bunch**
  20:6

**C**

**call**
  5:7
**called**
  5:6 11:10 21:21
**cam**
  5:14 33:22,24 35:2
**camera**
  5:17
**car**
  9:10 23:12,18
  29:16 33:23 35:12,
  25 36:4
**care**
  36:9
**carefully**
  10:13
**case**
  9:13 14:20 15:1,9
  20:15 24:22 27:21
  32:13,22 39:8 41:1
**Center**
  11:10
**CERTIFICATE**
  41:3 42:1
**certify**
  42:2,7,12
**chance**
  17:3
**change**
  15:13

**CHANGE/
CORRECTION**
41:8
**characterization**
38:11
**charge**
10:9,24
**charges**
11:1 13:12
**circumstances**
9:25 38:22
**City**
4:17,25 41:1,2
**civil**
25:13,16 26:3,19,
22
**clarify**
4:19
**cleared**
38:24
**cloudy**
38:5
**Coastal**
5:7 18:9,17
**commencement**
42:4
**commission**
42:19
**common**
25:1 27:17
**communicate**
14:22
**communicated**
14:20
**communication**
37:5,9 38:7
**complete**
30:2 32:12 39:13
**completed**
37:14
**Complied**
6:24 34:24 35:17,
22
**Compound**
18:21
**concerned**
9:23 12:2

**concluded**
40:7
**conclusion**
40:9
**confident**
36:8
**confused**
18:25 32:9
**consequences**
26:21
**constitutes**
42:10
**construed**
21:24
**contact**
5:12 19:19
**contents**
39:3 41:6
**conversation**
36:4 39:4,15
**corner**
7:1
**correct**
5:1 7:20 8:10,14
9:1 12:9 18:20
19:13 20:22 26:18
33:14 37:6,10
38:19 42:11
**corrections**
41:6,18
**counsel**
42:13
**couple**
30:23
**courts**
22:4
**crime**
10:1
**criminal**
10:1,5,8,16,21
11:2,9 12:4,6,22
13:10 14:13 31:13,
17
**cue**
6:6 34:2,17
**cued**
6:18,19 34:7
**custody**

18:13 33:18

_____

**D**

_____

**DA's**
39:1
**dark**
14:6
**date**
21:16 41:1
**day**
41:20 42:17
**days**
29:1
**decided**
35:13
**decision**
22:6,10 29:4 32:15
33:19 36:20 37:1,3
**DECLARE**
41:4
**Defendants'**
6:19
**denied**
18:10
**deny**
20:15
**department**
25:16
**depends**
25:21,23
**deposition**
6:8 40:6,9 42:7
**depositions**
26:11
**describe**
21:14 31:8
**detectives**
29:14,24 30:10
**determination**
25:7
**determined**
19:17
**digression**
10:4
**disciplinary**
22:17 26:24

**discipline**
21:12 22:7,9,11
25:19,22,24 26:2
**disciplined**
22:20 25:12,16
26:25 27:6
**discussed**
13:3 18:12
**discussion**
31:4,9
**dishonesty**
19:20 21:24
**dispatching**
11:25
**disputed**
11:1
**doctor**
20:11,18,25 21:1
**document**
17:23 18:22
**documented**
13:23
**documents**
8:20,21 22:4
**domestic**
5:7 10:9 13:12 39:8
**door**
5:18 8:14,15 9:4,6,
15,19 14:10
**drafted**
23:11
**drafting**
23:4
**Drive**
5:8
**due**
9:21,24 19:18 20:5
**duly**
4:3 42:5
**Dune**
5:8 18:9,17

_____

**E**

_____

**E-L-T-O-N**
4:13
**earlier**
13:11 37:4

**elapsing**
5:16
**electronic**
28:24
**Elton**
4:11
**employed**
42:13
**end**
27:10 35:15
**ended**
27:11 28:1
**enter**
28:10,14 29:11
**entered**
28:8 36:20
**entering**
28:17 33:13
**entire**
8:2
**entirety**
13:15
**essentially**
32:17
**et al**
41:1
**evening**
5:4 7:7,18,19
12:14,15
**evidence**
32:3
**exact**
26:14
**examination**
4:5 31:1 33:7 42:5
**exceeded**
20:18
**excuse**
21:22
**execute**
27:13
**Executed**
41:20
**executing**
27:25
**exhibit**
6:8 40:8

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Andrew Thompson
March 2, 2022

**expires**
42:19

**explain**
19:22

**explained**
39:7

**explanation**
25:3

**expunged**
11:3,12

**extra**
13:21

**F**

**face**
37:15

**face-to-face**
37:9

**fact**
18:19

**facts**
25:6 32:13,18,19,
22

**fair**
25:10,11 27:23
28:5 29:18 30:12
32:2

**fast-forward**
35:14

**fault**
6:18

**felt**
20:11 21:2,3

**file**
22:17

**filed**
10:25 11:14

**filing**
11:14

**filings**
10:9

**finally**
20:9

**find**
17:11 26:11 28:7

**finding**
32:13

**fingertips**
17:3

**finish**
27:18,20

**firearms**
15:21 16:6 18:9,11,
16,20 19:5 23:7,19
28:8 30:8 31:6

**fired**
20:23

**firing**
20:21

**follow**
15:10

**follow-ups**
15:1,3

**footage**
33:25

**foregoing**
40:6 42:10

**forgetting**
34:12

**form**
42:10

**found**
10:10,25 15:20
16:6,9 18:9,17,20
19:5 23:8,19 28:8
30:8 33:13

**foundation**
6:3 26:4

**front**
13:24,25 23:12
28:17 29:7,10 36:1

**G**

**gave**
16:18 20:11

**give**
6:3,9 17:4,24 26:12
39:24

**giving**
30:22

**glad**
11:5

**good**
4:7,8 10:4 13:1
22:25 25:6 30:16

32:13

**group**
13:3

**guess**
25:21

**guilty**
11:1

**guys**
11:22

**H**

**half**
20:1

**hand**
42:17

**handed**
29:24 30:4,5,9

**handing**
29:13

**happen**
4:18 5:4 11:20
37:23,24

**happened**
6:4 7:21 27:1
29:20,23 34:4

**hard**
30:22

**head**
13:18

**hear**
7:3 14:8 18:19 19:9

**heard**
18:8,16 19:4 23:19,
21 30:8

**hearsay**
14:1

**held**
26:24

**hereunto**
42:16

**Hey**
34:5

**histories**
12:7

**history**
10:1,5,8,16,21 11:2
12:4,22 13:10

14:13 31:13,17

**hold**
5:21 14:25 16:14
36:12

**Holiday**
31:4

**home**
9:24 15:20 16:6,7,
8,9,22,23 18:9,12,
17,19 19:5 20:7,12
21:20 23:5,8,12,19
28:8,14 29:11 30:3,
8 31:5 33:14 36:20
37:14 38:16

**Honestly**
23:10

**honesty**
21:12 22:13 24:1,9

**hour**
20:1 40:7

**house**
9:19,20 13:2,22,25
14:1,4,6,15 24:15
28:17 29:7,10
33:12

**hush-hush**
25:25

**hypothetical**
38:22

**I**

**important**
32:17,18

**inaccurate**
11:20

**inappropriate**
38:12

**incident**
22:19 37:6 38:4

**include**
9:9 31:23 32:2,14

**includes**
37:8

**Including**
22:13

**indicating**
17:17,19

**indications**
9:19 10:7 13:25

**information**
11:10 13:6 37:20
38:17,21

**informed**
13:6

**initial**
15:12,14

**injured**
20:4

**injuries**
20:5

**injury**
20:19

**interested**
42:14

**interesting**
11:17

**interrogatories**
16:18 17:10

**interrogatory**
16:4,11 17:7

**issued**
29:21 32:4

**items**
31:22

**J**

**Jill**
33:4 41:2 42:2,24

**job**
24:14

**Johnny**
5:15

**Jordan**
4:16,25 15:24
19:12,15 20:11
22:8 26:2 41:1

**judge**
25:5 29:1 32:4,15
39:19

**July**
42:19

**Justice**
11:9

**K**

kind
13:3 31:14 32:9
39:24
knew
16:8 31:18
knocked
5:17 8:15 9:6
knocking
8:14 9:3,14,18
knowledge
25:1

**L**

Lake
41:2
late
21:21 27:15
latest
22:18
lead
14:3
learn
15:19 33:16
learned
16:5 18:11 30:20
leave
14:25 19:18 20:24
30:4
left
15:10 30:1,3,5
33:18 35:10 36:6,8,
24
left-hand
7:1
length
20:18
lesson
30:20
lie
24:25 25:2,3,4
lies
24:21
life
21:20

light
14:7
List
22:1,3
listen
10:12
long
5:10 8:16,24 9:5
19:24 28:25 39:11
longer
9:11 20:12,24 21:1,
3
looked
12:13 36:4 39:10
lot
12:3 14:20 24:7
lots
24:6
love
16:12
lower
7:1
lying
24:23

**M**

made
15:25 33:19,22
36:19 37:1,4 41:18
MAES
16:14
Maese
4:6,21,24 6:1,6,11,
14,17,21,23,25
8:17,19 11:5 16:16
17:2,6,8,14,18,20,
25 18:3,4,6,7,13
19:4 21:8,11 26:9
28:16 30:13,16,20
31:6,22 33:2,6,8
34:5,9,15,17,20,22,
25 35:4,7,10,14,18,
20,23 36:18 38:13
39:20,23 40:2 41:1
Maese's
31:5
Main
41:2

make
5:11 8:2 13:21 15:7
17:1 24:18 25:6
32:15 39:25
making
22:9
March
40:7 41:1 42:17
marked
40:8
material
24:2,9,21 25:8
32:1,3,17
means
19:23
meeting
9:22 14:14
memory
38:11
mental
21:23
met
13:2
middle
39:16
minute
36:7
minutes
5:16 6:7,14 7:13,25
8:14 9:3,14,18
13:23,24 28:25
31:21 34:10,18,19,
20 35:11,25
misstates
18:22 36:13 38:9
mistaken
18:5
misuse
19:18,20,23
morning
23:15
motor
20:4
Multiple
23:2

**N**

narratives
15:5
necessarily
28:3 37:8
needed
20:25 39:9
Nielsen
41:2 42:2,24
night
14:18 15:15 27:1,6
33:17 39:17
noises
14:8
normal
25:18 37:5 38:21
Notary
42:3
note
13:21
noted
41:6
notes
39:25
notification
20:10
Number
18:2

**O**

Objection
5:19 10:18 18:21
28:11 36:13 38:8
observe
9:19 13:25 14:2
occupation
4:15
office
39:1
officer
4:16,25 5:15 13:7
15:12,14,17,23
18:11 21:17 27:5
31:3 33:9 34:25
35:1

officers
9:23 13:3 14:2,18
15:6,20 16:5 18:8,
12,16,19 19:5 23:8
28:7 31:5 33:11,19
37:6,13 38:15
Oil
31:4
omissions
24:2,9,21 25:8 32:1
39:13
omit
31:23 32:18,21
order
10:10 13:13 31:13
overtime
28:2

**P**

p.m.
30:17 40:3,7
part
7:19 11:2 31:10,16
parties
42:13
past
31:19
patches
21:20
pattern
32:16
pause
6:23 34:22 35:8,20
PD
26:2
PENALTY
41:5
people's
25:19 26:19,22
Perfect
5:3 14:11 19:8 21:6
35:4
perfectly
13:19
perform
12:22
performed
33:12

**period**
22:25
**PERJURY**
41:5
**permitted**
20:19
**personally**
14:2
**phone**
36:5
**place**
42:8
**plan**
13:4 31:12
**planning**
14:14
**play**
6:20
**played**
6:22 34:16,21 35:6,
19
**playing**
34:14 35:5
**plenty**
20:3
**point**
7:20,21 10:6,17
13:10 18:15 33:17
**police**
4:16,25
**policy**
26:1,2,6,8,10,12,14,
16,17,23
**porch**
14:7 36:1
**position**
9:10
**possessed**
31:6,18
**possessing**
31:16
**possibility**
31:15
**possibly**
9:24
**practice**
27:17 32:2,16 37:5
38:7

**prep**
8:20
**pretty**
20:13 25:24
**previous**
42:4
**previously**
38:6,15
**printer**
29:16
**prior**
22:7,8,11
**Professional**
42:3
**program**
11:6
**proper**
19:19 20:10 32:15
**protective**
10:10 13:13 31:13
33:20,23 35:13,24
36:9 37:14
**Public**
42:4
**pull**
17:24
**put**
28:24 32:23 38:14

———————————
**Q**
———————————

**Q&a**
41:2
**question**
7:13 8:5 10:12,13
13:1 16:4,25 19:1
26:7 32:8 36:17
38:10
**questions**
8:25 30:23
**quick**
30:14
**quickly**
34:3

———————————
**R**
———————————

**radio**
37:9,15

**read**
40:5 41:5
**Ready**
33:4,5
**real**
34:3
**realize**
16:3
**reason**
13:21 15:12 19:16,
17 20:21,22 38:3
41:8
**reasonable**
5:18,20,24 13:19
30:7 37:12,18,22
38:13
**recall**
4:18 5:4,5,6 13:8
14:5 16:2 22:21
23:10,20,22 24:11,
17,22 27:12,14,15
28:4 29:20 30:11
31:3,24 39:11,14,
15
**received**
28:21 37:19,21
38:17
**recently**
19:12
**recess**
30:17 40:3
**recollection**
7:6 15:23
**record**
4:10 14:1
**recording**
7:6,16 8:1,2,9
**records**
11:12 12:1,13
**redirect**
33:3
**reduced**
42:9
**referred**
41:5
**reflects**
41:7
**Registered**
42:3

**regularly**
12:11 24:14
**related**
42:12
**remember**
13:16,17 14:6
24:17,18,20 31:8,
21 38:3
**removed**
11:15
**report-writing**
12:2
**Reporter**
33:5 41:2 42:3
**REPORTER'S**
42:1
**Reporting**
41:2
**request**
18:1,15
**responding**
21:23
**rest**
13:6
**result**
42:15
**return**
20:6,10
**review**
8:1 35:1
**reviewed**
8:19,21 39:17
**revise**
36:10
**rights**
25:13,16 26:3,20,
22
**rough**
21:19
**RPR**
42:24

———————————
**S**
———————————

**safety**
9:23
**Salt**
41:2

**satisfactory**
24:18
**scene**
8:13,24 9:3,6,14,22
14:18 15:1 29:14
30:1 31:20 36:6,8,
24
**scenes**
14:23
**school**
20:5
**Scott**
6:6 8:17 16:14 17:2
34:5,23 35:7,15,21
**screen**
6:16 7:11 17:13
34:13
**seal**
42:17
**search**
10:21 12:4,6,15
27:13,25 28:9,14,
18,21 30:3,9 31:17,
23 32:4,19
**searched**
13:5 38:16
**searches**
12:23 14:1
**searching**
18:19
**seconds**
7:13,25 9:11 28:25
35:15
**security**
18:10 19:6 23:8
33:12
**September**
4:14,24 27:7
**Serrano**
5:15
**Serrano's**
35:1
**served**
29:25
**service**
11:25
**set**
42:8

severity
10:1 25:22,23
share
17:12 34:13
shared
6:15
shift
27:9,13,18 28:1
short
19:25
shorthand
42:8
show
6:2 10:24 11:13
shows
5:15
sick
19:18
sign
40:5
signed
16:17 22:4
sir
7:8 8:23 10:23
12:16 24:6,12
sitting
23:11
situation
21:23
skip
8:17
sound
5:18
Sounds
30:16
source
18:22
South
4:16,25 15:24
19:12,15 20:11
22:8 26:2 41:1,2
speaks
5:22
specific
11:6
spell
4:12

Spillman
11:8,22,23,25 12:2,
3,6,10,13,20
stamp
7:2
standard
38:7
start
34:14 35:11,12
started
8:25 36:9
starting
9:8
state
4:9 36:18
stated
16:5 36:16
station
23:20,21
stay
20:18 27:17
stayed
20:23 27:15
staying
19:18 27:12
Steve
6:13,20 30:18 34:8
story
19:24
Street
41:2
stuff
10:2 12:1,4 13:14
14:13 24:6,11
31:14 36:5
subject
21:7,11
submitted
23:14 24:15 38:25
39:18
successfully
37:13
summary
32:12
supervisor
21:21
supervisors
19:19

supplemental
15:5
sweep
18:10 19:6 23:9
33:12,20,24 35:13,
24 36:9 37:14
sworn
4:3 18:8,16 42:5
synopsis
26:13
system
11:15 28:24

___

**T**

T-H-O-M-P-S-O-N
4:13
tactical
13:3 14:14 31:11
talk
10:3 14:17 15:6
talked
9:21 31:13,15 37:4
talking
11:7 16:13
taught
24:5,6,8,12
technology
11:23
tee
6:13
telling
18:18
terminate
22:7,10
terminated
19:12
termination
19:16
testified
4:4
testify
42:6
testimony
36:14 38:9 41:7
thereof
41:6
thing

13:11 38:5
things
7:21,23 26:11
thinking
10:23
Thompson
4:2,9,11 7:1 18:5,
11 19:11 31:3 33:9
34:25 41:4,24
time
5:11,16,17 7:2 9:9
11:24 13:20 20:3
22:19,25 27:9
30:23 33:23 36:24
42:8
today
8:20
told
5:14 12:24,25 13:9,
11 14:12 16:1
17:13 19:15 20:17,
20,22 22:8 23:7,13
31:19 37:13
top
13:17
totally
16:24
traffic
37:9
trained
24:1,4
training
24:21
transcript
41:5,6 42:11
transported
15:24
true
14:25 19:14 32:6,
20 42:11
truth
4:3 25:6 42:6
turned
5:16
twenty
34:18,19,20
typewritten
42:10

typically
15:9 27:11

___

**U**

UCJIC
11:9,10,11
understand
19:11 34:3 38:2,3
understanding
26:15,17
unsure
23:24
Utah
11:9 41:2

___

**V**

video
5:17,22 6:2,22
8:22,24 9:8 13:23
34:16,21 35:1,6,19
36:3,21
videos
36:4
viewing
7:10
violate
26:19,22
violating
26:23
violations
25:13,17 26:3
violence
5:7
voice
7:2,4

___

**W**

wait
28:20,22 29:4 30:2
walked
36:21
walking
35:12
wanted
39:9

**warrant**
  23:5,11,14 24:9,15,
  24 25:7 27:13,25
  28:9,15,18,21,24
  29:2,5,11,12,21,24,
  25 30:9 31:23 32:4,
  11,19 38:15,18,20,
  25
**warrants**
  24:1,2
**watched**
  8:22
**weapon**
  13:12
**weapons**
  10:9 16:9,22 31:16
**West**
  5:7
**WHEREOF**
  42:16
**woken**
  39:16
**word**
  32:17
**work**
  12:5 20:6,8,10
  21:22,23 27:18
**write**
  15:6 32:11
**written**
  16:4
**wrote**
  16:10 37:15 38:19

———————————

**Y**

———————————

**year**
  4:20
**years**
  13:20 21:17 22:22
  23:2 24:12
**YOUNG**
  4:19,23 5:19,21
  6:9,12,15,18,24
  10:18 17:4,7,11,16,
  19,23 18:1,21
  21:10 26:4 28:11
  30:14,18,22 31:2
  32:25 34:7,12,19,

24 35:9,17,22
36:13 38:8 39:22,
24 40:4