# In The Matter Of:

*S. STEVEN MAESE*

*v.*

*SOUTH JORDAN CITY*

*Case No. 2:21-cv-0562-DBB-CMR*

Travis Kaer

March 2, 2022





1872 South Main Street
Salt Lake City, Utah 84115
801.484.2929
www.QAreport.com

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

_____

S. STEVEN MAESE,           )
                           )
     Plaintiff,            )
                           ) Case No. 2:21-cv-0562-DBB-CMR
vs.                        )
                           ) District Judge:
SOUTH JORDAN CITY,         ) Howard C. Nielson, Jr.
OFFICER JOHNNY             )
SERRANO, OFFICER           ) Magistrate Judge:
ANDREW THOMPSON, AND       ) Cecelia M. Romero
OFFICER DOES 1-10,         )
                           )
     Defendants.           )

_____

VIDEOCONFERENCE DEPOSITION OF:  SERGEANT TRAVIS KAER

MARCH 2, 2022

12:32 P.M. TO 1:15 P.M.


Witness Location:
1600 West Towne Center Drive
South Jordan, Utah 84095

Reporter:  Jill S. Nielsen, RPR, Notary Public

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Travis Kaer
March 2, 2022

```
 1                        APPEARANCES

 2    PRO SE:

 3         S. STEVEN MAESE
           3892 West Coastal Dune Drive
 4         South Jordan, Utah 84009
           801.690.6960
 5         steven.maese@gmail.com
           (Appearing via videoconference)
 6

 7    FOR THE DEFENDANTS:

 8         R. SCOTT YOUNG, ESQ.
           Snow, Christensen & Martineau
 9         10 Exchange Place, Suite 1100
           P.O. Box 45000
10         Salt Lake City, Utah 84111
           801.521.9000
11         rsy@scmlaw.com
           (Appearing via videoconference)
12

13    ALSO PRESENT:

14         EDWARD R. MONTGOMERY, ESQ.
           South Jordan City Attorney's Office
15         1600 West Towne Center Drive
           South Jordan, Utah 84095
16         801.254.3742
           emontgomery@sjc.utah.gov
17         (Appearing via videoconference)

18
      ALSO PRESENT:
19
           Libby Lowther (Appearing via videoconference)
20

21

22

23

24

25
```

```
 1                              INDEX

 2    EXAMINATION OF SERGEANT TRAVIS KAER:           PAGE

 3    By Mr. Maese                                      4

 4    By Mr. Young                                     39

 5

                              EXHIBITS
 6                                              INITIAL
      NUMBER                                    REFERENCE
 7
      Exhibit 1     Body Cam Video, Defendants'    26
 8                  705 (Retained by Mr. Maese
                    and Mr. Young)
 9
      Exhibit 2     South Jordan Police Department 26
10                  Staff Meeting Minutes,
                    November 12, 2019
11

12    (Exhibit 2 provided electronically to the court
      reporter.)
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                  P R O C E E D I N G S
 2                  SERGEANT TRAVIS KAER,
 3    having been first duly sworn to tell the truth,
 4    testified as follows:
 5                     EXAMINATION
 6    BY MR. MAESE:
 7          Q.   All right, sir.  Would you please state
 8    your name and position.  And would you spell your
 9    name, please, as well.
10          A.   Yeah.  My name is Travis Kaer.  Last
11    name is spelled K-a-e-r.  I am a police sergeant for
12    the City of South Jordan in the patrol division.
13          Q.   Perfect.
14               Do you remember the evening of
15    September 25, 2019?
16          A.   Yes.
17          Q.   Can you tell me what you were doing
18    that evening?
19          A.   I was the shift sergeant for the
20    graveyard shift.
21          Q.   All right.  And were there any cases
22    that stood out in your mind that night?
23          A.   There were several cases that night, as
24    there usually is.
25          Q.   All right.  Was there a case at
```

S. STEVEN MAESE v.                                      Travis Kaer
SOUTH JORDAN CITY                                    March 2, 2022

```
 1   3892 West Coastal Dune Drive in West Jordan that
 2   you remember?
 3           A.   Yes.
 4           Q.   Tell me what happened.
 5           A.   I responded to a report --
 6                MR. YOUNG:  Hold on.  Objection.
 7   Vague.
 8                You can answer.
 9           A.   I responded to a report of a domestic
10   where other officers had been assigned.
11           Q.   (BY MR. MAESE)  And when you came upon
12   this scene, what did you see?  What did you observe?
13           A.   At which portion of which part of the
14   scene?
15           Q.   When you first -- when you first came
16   on the scene.
17           A.   Well, the first part of the scene
18   wasn't at the address.  It was at the Holiday Oil --
19           Q.   Okay.
20           A.   -- which is located at about 4000 West
21   and 10400 South.
22           Q.   All right.  What about when you came to
23   3892 West Coastal Dune Drive?  What did you see?
24           A.   As far as when we first arrived?
25           Q.   When you first arrived, correct.
```

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Travis Kaer
March 2, 2022

1        **A.    The house was darked out.  We were**

2   **setting up a containment around the home so that we**

3   **could try to make phone contact inside with the male**

4   **subject, which was you, sir.**

5        Q.   All right.  Where -- where were you

6   positioned?

7        **A.    I believe I was east of the house and**

8   **across the street down the road a ways.**

9        Q.   Okay.  And how long were you there?

10  How long did it take to create the containment?

11       **A.    Oh, I -- I don't know how long the**

12  **whole thing went down.  I don't have any of that**

13  **information.**

14       Q.   I know.  Just approximately from your

15  recollection.  I mean, what do you recall?  Was it

16  five minutes?  Was it 30 seconds?  Was it an hour and

17  a half?

18       **A.    It -- it was quite a while.  I don't**

19  **know.**

20       Q.   Okay.  During that "quite a while"

21  time, what did you see?  What did you observe?

22            MR. YOUNG:  Objection.  Vague.

23            You can answer.

24       **A.    I observed the house.  The officers**

25  **were setting up around the home.  I had basically**

S. STEVEN MAESE v.                                    Travis Kaer
SOUTH JORDAN CITY                               March 2, 2022

1   started trying to make phone calls to your phone.

2          Q.   (BY MR. MAESE)  Okay.  Did you see any

3   lights on?

4          A.   To be honest with you, I don't recall

5   the lighting or anything at the home.

6          Q.   All right.  Let me ask you a little bit

7   about your training.  Tell me, how are you trained to

8   write reports?

9          A.   As far as the method or how we

10  structure the report or --

11         Q.   All of the above.

12         A.   Well, we write, basically, the

13  information that we get during the incident.

14         Q.   Are you trained to write your

15  observations?

16         A.   Depending on which part of them are

17  pertinent to the position and job assignment I was

18  given during the situation.

19         Q.   Okay.  Are you trained to document all

20  pertinent observations?

21         A.   That I feel are pertinent at the time,

22  yes.

23         Q.   Okay.  So if you felt it was pertinent,

24  you would have documented it, correct?

25         A.   Most of the time, yes.

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Travis Kaer
March 2, 2022

1    Q.   What times would you see something that

2    is pertinent that you would not document?

3    **A.   Times that somebody else would feel it**

4    **more pertinent than I did at the time.**

5    Q.   No, no.  I'm asking you specifically

6    about you.  Tell me about times that you observed

7    something that you believed was pertinent but then

8    you decided not to document.

9    **A.   Oh, I -- I don't know.**

10   Q.   Has that ever happened?  Have you ever

11   observed something pertinent and then decided not

12   document?

13   **A.   Not decided, no.  That would be a**

14   **conscious decision.**

15   Q.   Okay.  So, consciously, if you observe

16   something and you deem it pertinent, you document it.

17   Would that be a fair statement?

18   **A.   I think so, yes.**

19   Q.   Okay.  Perfect.  So if your report from

20   that evening didn't mention activity in the house, it

21   would be reasonable to say you didn't observe any

22   activity in the house?

23   **A.   Just me, personally?  No, I --**

24   Q.   Yes, you personally.

25   **A.   Not specifically.  I probably would**

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Travis Kaer
March 2, 2022

1   have put something in there.  But --

2          Q.   All right.

3          **A.   -- if it didn't pertain or if I didn't**

4   **see it, I wouldn't know.**

5          Q.   Right, right.  And I'm not asking you

6   to speak on behalf of any other officer or anybody

7   else that could possibly have been there.  I'm simply

8   asking you for your own personal observations.

9          And that's going to be true of this

10  entire deposition.  I'm not going to ask you for what

11  somebody else thought or what somebody else did; I'm

12  just going to ask you about your observations and

13  what you've been trained to do.  So --

14          MR. YOUNG:  Hey, Steve, can you just

15  make sure and let him finish your answer before you

16  ask the next question?  I think you guys are talking

17  over each other a bit.

18          MR. MAESE:  If I've done that, I

19  apologize.  I firmly believed he was finished with

20  his answer.

21          MR. YOUNG:  Go ahead.

22          Q.   (BY MR. MAESE)  Okay.  So during that

23  evening, you were a sergeant on duty, correct?

24          **A.   Yes, sir.**

25          Q.   Okay.  After -- so you didn't -- so you

1   don't recall exactly specifically that night seeing

2   anything, but if you had seen something, you would

3   have -- and it had been pertinent to you, you would

4   have documented it?

5        **A.   Yes, unless I had forgotten what --**

6   **anything little.  But --**

7        Q.   Okay.  Right.

8        THE REPORTER:  Excuse me.  Excuse me.

9   I just need one at a time, please.

10       MR. MAESE:  Okay.

11       **A.   My basic actions for the situation**

12  **that were -- that I was doing and dealing with I**

13  **would have tried to document, to the best of my**

14  **recollection, to be able to, you know, renew my own**

15  **memory at a later date if it was time for trial or**

16  **other situations.**

17       Q.   (BY MR. MAESE)  Have you had an

18  opportunity to review your report from that

19  evening?

20       **A.   Yes, I've been through the report.**

21       Q.   Okay.  So did you -- did you see any

22  time you noted any activity at my house in your

23  report?

24       **A.   No, I had -- I don't think I put any**

25  **descriptions of your home inside the report -- my**

1   **report.**

2          Q.   All right.  There comes a time when I'm

3   taken into custody and I'm led off.  Have you had a

4   chance to review a body cam from that evening?

5          **A.   I have reviewed my body cam.**

6          Q.   Have you reviewed Officer Serrano's

7   body cam?

8          **A.   No.**

9          Q.   All right.  You don't happen to have --

10  I thought you would be at Scott's office there, so I

11  thought you'd have access to exhibits.

12          You don't happen to have access to

13  what's titled as Defendants' 708, which is Serrano's

14  body cam, do you?

15          **A.   No, I don't.**

16          MR. YOUNG:  Do you have that, Steve?

17  You can share your screen and show it to him.

18          MR. MAESE:  I don't have it -- I'm

19  looking on another computer, so I don't have it on

20  this particular computer.  I'm just using this

21  specific computer for Zoom.

22          MR. YOUNG:  Okay.

23          MR. MAESE:  And it's a large file, so I

24  don't know that I can send it.  Let me see.

25          MR. YOUNG:  I can probably pull that

```
 1   up.
 2                  MR. MAESE:  Perfect.
 3                  MR. YOUNG:  Do we want to go off the
 4   record for a second?
 5                  MR. MAESE:  Sure, let me go off the
 6   record.  Let's go off the record.
 7                  (Discussion off the record.)
 8                  MR. YOUNG:  So let's go on the record.
 9   Scott Young for South Jordan.
10                  We've pulled up what's marked as
11   Defendants' 705.  It's a video.  I'm sharing my
12   screen to show that to the group.
13                  Can everyone see that?
14                  THE WITNESS:  Yes.
15                  MR. YOUNG:  Okay.  Mr. Maese is asking
16   me to cue it to 20:55, which is reflected down in the
17   bottom left corner.
18                  And, Steve, do you want me to just play
19   it?
20                  MR. MAESE:  If you would, please.
21                  (The video was played.)
22                  MR. MAESE:  Would you pause it, please.
23                  MR. YOUNG:  (Complied.)
24          Q.   (BY MR. MAESE)  Sir -- I'm sorry -- is
25   it "Kaer" or is it "Kaer"?
```

 1          A.    "Kaer," sir.

 2          Q.    Sergeant "Kaer."  Is that you in the

 3    video?

 4          A.    Yes.

 5          Q.    All right.  Perfect.  Just wanted to

 6    make sure.

 7                MR. MAESE:  Could you keep playing it

 8    for another 30 seconds or so, Scott?

 9                MR. YOUNG:  Just tell me when you want

10    me to pause it.

11                MR. MAESE:  Will do.

12                (The video was played.)

13                MR. MAESE:  Pause it.

14                BY MR. YOUNG:  (Complied.)

15          Q.    (BY MR. MAESE)  Okay.  That seems to --

16    that appears to be you commanding the other officers

17    to do a sweep of my house; is that correct?

18          A.    Correct.

19                MR. YOUNG:  Object.  Let me get in one

20    objection.  The video speaks for itself.

21                You can answer.

22          Q.    (BY MR. MAESE)  As a matter of force,

23    do you order your officers to do protective sweeps at

24    homes?

25                MR. YOUNG:  Objection.  Vague.

 1              You can answer.

 2          **A.    You have to define "matter of force."**

 3   **I don't think I understand what your question is.**

 4          Q.    (BY MR. MAESE)  Fair enough.  Was there

 5   any -- so you didn't note any activity in your report

 6   of either -- of either lights or sounds from inside

 7   my house.

 8              Where you have someone that's -- that

 9   you arrest at their home, do you normally ask

10   officers underneath you to conduct a protective

11   sweep?

12              MR. YOUNG:  Same objection.

13              You can answer.

14          **A.    In situations with the totalities that**

15   **this one's shown, for the safety of the public and**

16   **officers and anyone else, the home was part of a**

17   **crime scene, and we did a protective sweep and**

18   **verified and made sure we had no other people inside**

19   **the home.**

20          Q.    (BY MR. MAESE)  Okay.  I'm glad you

21   brought that up.  Tell me about your training as far

22   as crime scenes are concerned.  Are you trained not

23   to disturb crime scenes?

24              MR. YOUNG:  Objection.  Vague.

25              You can answer.

1   **A.   I'm trained to save lives and to take**

2   **care of people first, and then to work through a**

3   **crime scene and to do the best to preserve or**

4   **document anything that might be disturbed that would**

5   **be part of the crime scene; or to identify to**

6   **investigators later, if necessary, anything that we**

7   **did while on scene, which body cameras are wonderful**

8   **for.**

9   Q.   (BY MR. MAESE)   Okay.   But you are

10  trained to preserve crime scenes?

11  **A.   To the best we can for the saving of**

12  **lives.**

13  Q.   Okay.   What lives were you saving when

14  you entered my home?

15  **A.   We did not know at that time.**

16  Q.   So you had no -- you had no reason to

17  believe that there was another -- another person in

18  the home?

19  **A.   We had no reason to believe there**

20  **wasn't.**

21  Q.   Right, but you had no reason to believe

22  there was either.   I can conceive that you had an

23  absence of facts all the way around.

24  MR. YOUNG:   Objection.   Calls for a

25  legal conclusion.

1              You can answer.

2         **A.    Pretty much with anything we have, we**

3    **did not have any answers, and that was part of the**

4    **reason, so that we can make sure that we have -- make**

5    **sure everybody was okay and the situation would be**

6    **secure and safe.**

7         Q.    (BY MR. MAESE)  Did you have any reason

8    to believe that anyone was inside the home?

9              MR. YOUNG:  Same objection.

10              You can answer.

11         **A.    I guess it comes back to the answer I**

12    **kind of already said, and I didn't have any reason to**

13    **believe that there wasn't already.  In fact, due to**

14    **the totalities and some of the situation from the**

15    **beginning to this point, it led to many concerns.**

16         Q.    (BY MR. MAESE)  So let me -- allow me

17    to rephrase this.

18              Yes or no, did you have any objective

19    reason to believe that someone else was in the home?

20              MR. YOUNG:  Same objection and vague.

21              You can answer.

22         **A.    You when you say "objective," I'm not**

23    **sure I understand exactly what you're asking for.**

24         Q.    (BY MR. MAESE)  I'm saying did you hear

25    a voice?  Did you see a shadow?  Did you -- did the

 1  complainant say, There's another person in the home?

 2  Did you have any sort of objective, third-party

 3  reason to believe that someone else was in the home?

 4       **A.   I had concerns there might be due to**

 5  **the totalities of the entire scene --**

 6       Q.   Right, right, right.  I understood --

 7       **A.   -- and the information that I had --**

 8       Q.   I understood your -- I understood your

 9  answer, and, again, I'm asking you, yes or no, did

10  you have objective reason to believe someone else was

11  in the home?

12            MR. YOUNG:  Same objections.  And you

13  need to let him finish his answer.

14            MR. MAESE:  Well, I limited my -- I

15  limited his answer to yes or no.  Instruct your

16  client to answer the question as asked, please.

17            MR. YOUNG:  No.  It may not be a

18  yes-or-no answer, even if you've asked it that way.

19  So --

20            MR. MAESE:  Well, it -- it could -- it

21  would either be yes, no, I don't know, or -- or

22  something -- it's not going to be -- it's not going

23  to be an expounding answer.  It is a yes-or-no answer

24  the way I've asked it.

25            MR. YOUNG:  Either way, you and I and

S. STEVEN MAESE v.                                          Travis Kaer
SOUTH JORDAN CITY                                          March 2, 2022

1   he can't talk over each other.  It's really hard for

2   the court reporter.  So --

3                MR. MAESE:  Fair enough.  Please

4   instruct your client to answer the question I've

5   asked.

6                MR. YOUNG:  You can ask the question.

7   I'm not going to -- I'm not -- you're not entitled to

8   instruct me what to talk to my client about, and --

9                MR. MAESE:  I'm not instructing you.

10  I'm asking you a question.  I'm asking if you would.

11               MR. YOUNG:  You're interrupting me

12  again.  You're entitled to ask a question.  Go ahead

13  and ask it.  He'll answer it to the best of his

14  ability.

15               MR. MAESE:  Okay.

16       Q.   (BY MR. MAESE)  Sergeant Kaer, please

17  limit your answer to a yes or no.  Was there any

18  objective indicia that other people remained in the

19  residence?

20               MR. YOUNG:  Same objections.

21               You can answer.

22       **A.    I'm not understanding exactly what --**

23  **the specific objectives you're requesting.**

24  **Totalities of the situation led me to believe I did**

25  **not know, and I had concerns.**

1      Q.    (BY MR. MAESE)   But your concerns

2  weren't based on something you can articulate other

3  than just this vague totality of circumstances?

4          **A.    It wasn't a vague totality.**

5      Q.    All right.   Well, what was the

6  specifics that led you to believe someone else was in

7  the home?

8          **A.    Due to the immense damage done to our**

9  **victim and the type of crime and the investigation**

10  **of a horrendous domestic leading into the**

11  **uncooperativeness and inability to be able to contact**

12  **the individual through the most -- lowest and most**

13  **safest means, by phone, and in the preservation of**

14  **life and preservation of the scene, yeah, I think I**

15  **had a lot of information there I didn't have answers**

16  **to.**

17          **And to verify and to make sure that my**

18  **officers are safe, that my public is safe, and that**

19  **the scene is secured and evidence is maintained until**

20  **investigations can come, I would have to say, under**

21  **the totalities, it would be very specific.**

22      Q.    Okay.   So are you saying that the

23  amount of damage done to the complainant was, in your

24  experience, something that could only be done by

25  multiple people?   One person could not have inflicted

```
 1   that kind of damage?
 2         A.   No.  What I'm saying is I've not seen,
 3   in 25 years, an individual take that much damage and
 4   still be conscious enough and awake and have that
 5   many horrific things done.
 6         Q.   So one person could inflict that much
 7   damage on another person?
 8         A.   I don't know.  That would take the
 9   investigation to be completed in its totality to make
10   that determination.
11         Q.   Okay.  Let me ask you this:  Had
12   officers under your command refused to enter the
13   home, refused to do a protective sweep, what would
14   have happened to them?
15         A.   Nothing.
16         Q.   Nothing?  No discipline whatsoever?
17         A.   No.
18         Q.   So you don't discipline your officers
19   for insubordination?
20         A.   I think your definition of
21   insubordination and mine are on two totally
22   different realms.
23         Q.   Well, by all means, please tell me what
24   your definition of insubordination is, because I
25   think -- I think we both speak the English language
```

1    and insubordination has one definition, but I could

2    be wrong.

3           **A.     Insubordination is connected to a**

4    **supervisor -- a superior who makes a determination at**

5    **what point that it becomes that.**

6           **I have open conversation, and I would**

7    **hope that my officers and my superiors would be open**

8    **to complete conversation of which I'll never put**

9    **anybody into a spot that they don't feel comfortable,**

10   **whether it be for their own personal beliefs or their**

11   **own safety.**

12          Q.    Have you ever disciplined an officer

13   for insubordination?

14          **A.    No.**

15          Q.    Have you ever had an officer be

16   insubordinate?

17          **A.    Not in my opinion.**

18          Q.    Okay.  Are you aware of any instance

19   where South Jordan PD has disciplined an officer for

20   insubordination?

21          **A.    It's not in my wheelhouse.  I wouldn't**

22   **know.**

23          Q.    Okay.  Fair enough.

24          Have you been given training on the

25   Fourth Amendment?

 1          **A.   Yes.**
 2          Q.   And what has your training taught you
 3   as far as what amounts to exigent circumstances to
 4   enter a home without a warrant?
 5                MR. YOUNG:  Objection.
 6          **A.   As for the portions of a warrant with**
 7   **search?**
 8                MR. YOUNG:  Vague, calls for a legal
 9   conclusion.
10                You can answer.
11          **A.   Would you define which part of the**
12   **Fourth Amendment you're asking about?**
13          Q.   (BY MR. MAESE)  The entire amendment.
14   I just want to know your training on it.  And I think
15   I already told you, as far as entering a home,
16   exigent circumstances to enter a home.
17          **A.   Under this specific situation, what**
18   **we're dealing with?  Are you asking --**
19          Q.   No.  I'm asking what your training is,
20   the totality of your training in 25 years, as far as
21   what you've been taught are exigent circumstances
22   that allow you to enter a home without a warrant.
23          **A.   Well, it would be for the saving of**
24   **lives and then the exigent circumstance of fresh**
25   **pursuit.**

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Travis Kaer
March 2, 2022

```
 1          Q.   Okay.  So ignorance is not an exigent
 2   circumstance?
 3          A.   Not that I'm aware of.
 4          Q.   Okay.  Give me just one moment, please.
 5               All right.  Back.  Sergeant Kaer, did
 6   you enter my home?
 7          A.   I did.
 8               MR. MAESE:  Okay.  And if we go back to
 9   this 705, Scott, if we could get to about 28:50.
10               MR. YOUNG:  Sorry, what did you say,
11   Steve?
12               MR. MAESE:  28:50.
13               MR. YOUNG:  Okay.
14               (The video was played.)
15               MR. MAESE:  And if you could turn the
16   volume up on here.  There's audio and video.
17               MR. YOUNG:  Yeah.  Okay.  Okay.  It's
18   starting 28:49.
19               MR. MAESE:  Good enough.
20               (The video was played.)
21               MR. MAESE:  All right.  Go ahead, we
22   can pause it.
23               MR. YOUNG:  (Complied.)
24          Q.   (BY MR. MAESE)  Sergeant Kaer, is that
25   your voice?
```

1          **A.    No.**

2          Q.   Who is that?

3          **A.    That would be Officer Talbot.**

4          Q.   All right.  Officer Talbot.  Who is

5     present in that frame there?  What officers are

6     present there?

7          **A.    Well, just off my quick memory of that**

8     **was Officer Weeks and Officer Talbot.  I'm not quite**

9     **sure because I wasn't paying attention to the officer**

10    **that was in front of Officer Talbot.**

11         Q.   Okay.  So it's Officer Serrano's body

12    cam, and are you in that frame, then?

13         **A.    I don't know.  You'd have to replay it,**

14    **and I'd have to look for myself.**

15         Q.   All right.

16         **A.    This isn't a vantage point I'm familiar**

17    **with.**

18         Q.   I understand.

19              MR. MAESE:  Scott, could you rewind

20    that the ten seconds just so we can see -- identify

21    who's there?

22              MR. YOUNG:  Sure.  Yeah.

23              (The video was played.)

24              MR. MAESE:  Can you pause it right

25    there?

S. STEVEN MAESE v.                                          Travis Kaer
SOUTH JORDAN CITY                                          March 2, 2022

```
 1              MR. YOUNG:  Sorry.  A little slow.

 2              MR. MAESE:  If you could just rewind it

 3    just so the three officers are in the frame so we can

 4    identify all three of them.

 5              MR. YOUNG:  Yeah.  For the record, this

 6    is at 28:55 of Defendants' 705.

 7              MR. MAESE:  All right.

 8         Q.   (BY MR. MAESE)  Sergeant Kaer, who do

 9    you see in the frame here?

10         A.   Going from left to right, it would be

11    Officer Weeks, Officer Talbot, Officer Bills.

12         Q.   All right.  Perfect.  Perfect.  I

13    appreciate that.  Thank you very much.  Hold on one

14    second here.

15              And that's Officer Talbot's voice that

16    is listing off firearms?

17         A.   Well, he also listed off a baseball

18    bat, if I remember right.

19         Q.   Yes, but that is Officer Talbot's

20    voice, correct?

21         A.   Yes.

22         Q.   All right.  Thank you.  Sorry.  Give me

23    one more second here.  I'm just loading up a

24    document.

25              MR. YOUNG:  Do you want me to get off
```

S. STEVEN MAESE v.                                          Travis Kaer
SOUTH JORDAN CITY                                          March 2, 2022

```
 1   share, Steve, so you can share?

 2              MR. MAESE:  Sure, that would be great.

 3              MR. YOUNG:  Steve, should we make this

 4   Exhibit 1, this 705?

 5              MR. MAESE:  Sure, that would be great.

 6   Let's do that.

 7              MR. YOUNG:  We'll get it to the court

 8   reporter.

 9              MR. MAESE:  Forgive me; I don't use

10   Zoom a lot.  I use Teams.  So I'm not entirely

11   familiar with --

12              MR. YOUNG:  Down at the bottom, there

13   should be a button in the middle that says "share

14   screen."  If you click on that, it should show all

15   your computer screens, and you can choose which one

16   to share.

17              MR. MAESE:  Right.  I've got you right

18   now in a little, tiny window.  There we go.  All

19   right.  Share screen.  Perfect.

20              We can make this Exhibit 2, which is

21   Defendants' 870 through 876.

22       Q.   (BY MR. MAESE)  This appears to be

23   staff meeting minutes from November 12, 2019.  You

24   are listed as attending, Sergeant Kaer.

25              Do you have any recollection of this
```

 1  meeting?

 **2**        **A.   As a specific?  Not off the top of my**

 **3**  **head, no, sir.**

 4        Q.   All right.  Well, let me scroll down

 5  here to 874 under Major Case Review.  Can you see

 6  that?

 **7**        **A.   Yes.**

 8        Q.   All right.  So it says, Maese Case:  We

 9  are going to lose all gun charges due to protective

10  sweep being a violation of the Fourth Amendment.

11        Do you recall that being said in this

12  meeting?

**13**        **A.   I'm reading it in there.  I'm going to**

**14**  **say it was definitely there, so, yes, we would have**

**15**  **talked about it.**

16        Q.   Right, but I'm just asking if you

17  recall being in that meeting.

**18**        **A.   It's been a couple of years.  As far as**

**19**  **remembering who even said it, who is talking, I**

**20**  **couldn't even tell you.**

21        Q.   There is no shame in not remembering

22  what happened two years ago.  If you don't remember,

23  you don't remember.

**24**        **A.   Yeah.  I mean -- yes, it would have**

**25**  **been something we went through in our staff meeting.**

```
 1    We're very thorough in our notes for what we went

 2    over.

 3              So was that something we went over that

 4    day?  If that's a copy of our staff notes, yes,

 5    that's what we went over that day.

 6         Q.   All right.  Well, typically speaking,

 7    who gives these types of conclusions, these legal

 8    conclusions, to officers -- well, to sergeants?

 9         A.   As far as who would have made those

10    comments that were documented in the notes?

11         Q.   Correct.

12         A.   I -- I don't know because it could have

13    been any -- it could have been anybody from the

14    sergeant over investigations to the lieutenant over

15    investigations, or it could have been any other

16    lieutenant or the deputy chief or chief, depending on

17    who had the specifics.  Normally, it is either the

18    lieutenant or sergeant over the investigations unit.

19         Q.   All right.  Is that who handles the

20    major cases?

21         A.   The investigations division?

22         Q.   Correct.

23         A.   Yes.

24         Q.   All right.  Could you give me the name

25    of the sergeant and the lieutenant over that?
```

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Travis Kaer
March 2, 2022

1      A.    Currently?

2      Q.    Or at that time in 2019.

3      A.    2019?  I would have to guess, to be

4  honest with you.  I believe --

5      Q.    Hold on.  So there's a -- there's a

6  list, real quickly, of the attendees there.  I don't

7  know if that helps.

8      A.    The -- at the time, if I remember

9  correctly -- and I'm just going off -- guessing,

10  actually -- I believe the lieutenant at the time was

11  Lieutenant Pennington, and I think the sergeant at

12  the time was Sergeant Phillips.

13      Q.    Okay.  So, generally speaking, it would

14  have been either Sergeant Phillips, although it

15  doesn't look like he attended this particular

16  meeting, Lieutenant Pennington, or Deputy Chief

17  Knight?

18      A.    Those are -- on the normal, yes.

19      Q.    Okay.  All right.  Perfect.

20            So are you still currently over graves?

21      A.    Yes, sir.

22      Q.    All right.  I understand that

23  Officer Andrew Thompson has recently been terminated;

24  is that correct?

25      A.    I know he no longer works with us, yes.

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Travis Kaer
March 2, 2022

```
 1          Q.   Well, was he under your command?   I
 2    understand he's also worked graves recently.
 3          A.   No, he hasn't been under my shift for a
 4    bit.
 5          Q.   I received an e-mail from Scott saying
 6    that one of the reasons we had to hold these
 7    depositions now is because of graveyards.
 8          A.   The graveyard shift is me.  I got off
 9    work last night -- or this morning at 0600, and then
10    I had about an hour drive.  And I'm here now, and I
11    work tonight.  So I'm the graveyard guy.
12          Q.   Are you -- you're the only one?
13    There's no officers underneath you?
14          A.   I'm the only graveyard guy involved in
15    this currently.
16          Q.   All right.  When did Officer Thompson
17    last work under you?
18          A.   To be honest with you, I do not know.
19          Q.   Was it more than 30 days ago?
20          A.   Oh, yeah.
21          Q.   All right.  Fair enough.
22               And you have not been -- nobody has
23    told you why Officer Thompson was terminated?
24          A.   We've not been given details to the
25    situation due to it being an internal investigation
```

S. STEVEN MAESE v.                                          Travis Kaer
SOUTH JORDAN CITY                                          March 2, 2022

```
 1   for whatever reason, and --
 2           Q.   Okay.  Well, what gossip -- what gossip
 3   have you heard?
 4                MR. YOUNG:  Objection.  Foundation,
 5   hearsay.
 6                What does this have to do with the
 7   case?
 8                MR. MAESE:  I'm trying find out what
 9   the practices of South Jordan are as far as their
10   discipline.  And one of the things that I need to
11   talk about is show that South Jordan doesn't regard
12   civil rights very highly and that they just let
13   things permeate.
14                So I'm just curious, if we're not
15   making examples of people, that might go to show that
16   we don't -- we don't really care what their conduct
17   is.
18                MR. YOUNG:  Well, the gossip, whatever
19   that means, that he's heard, doesn't really relate to
20   that.
21                MR. MAESE:  Well, I -- I understand
22   that you're using the literal definition of gossip.
23   I'm trying to use something as vague as possible
24   because Sergeant Kaer said he doesn't know the
25   specifics.
```

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Travis Kaer
March 2, 2022

```
 1              So I guess I'm trying to -- I'm trying
 2    to ascertain the depth of his knowledge, because it
 3    seems to be evasive, his answer.
 4              MR. YOUNG:  You can answer.  You can
 5    answer.
 6         A.   Mr. Maese, my suggestion for you in a
 7    situation like this, because knowing when I have
 8    worked with Mr. Thompson, would be to ask
 9    Mr. Thompson.
10         Q.   (BY MR. MAESE)  But I'm not asking
11    Mr. Thompson; I'm asking you what you heard.
12         A.   That he no longer works with us.
13         Q.   What is the reason that you've heard
14    that he's no longer with South Jordan?
15              MR. YOUNG:  Same objections.
16         A.   I don't have any specifics.
17         Q.   (BY MR. MAESE)  I understand you don't
18    have any specifics.  What generalities, what gossip
19    have you heard?
20         A.   I don't spread gossip, sir.  I work in
21    a matter of facts and information that's tangible.
22         Q.   I have not accused -- I have not
23    accused you of spreading gossip.  I'm asking you what
24    gossip you've heard.
25              MR. YOUNG:  Can I just get in a
```

S. STEVEN MAESE v.                                    Travis Kaer
SOUTH JORDAN CITY                                 March 2, 2022

1  standing objection to this line of questioning?

2            MR. MAESE:  You can.

3            MR. YOUNG:  Thanks.  For the reasons

4  I've already stated.

5            Go ahead.

6       **A.    All I know is that he got in -- into**

7  **some trouble, was -- had an internal investigation**

8  **done, of which his employment was terminated.**

9            Q.   (BY MR. MAESE)  So what you're telling

10  me, for the record, under oath, is you heard

11  absolutely no reasons, factual reasons, regarding his

12  termination?

13       **A.    All we've heard of is tell the truth,**

14  **be honest, stay in front of your stuff, and when**

15  **you're asked for paperwork, give it.**

16            Q.   Okay.  But I'm asking you specifically

17  about Officer Thompson.  You're telling -- you're

18  saying --

19       **A.    That's what -- that's what I just gave**

20  **you.**

21            Q.   Okay.  I will ask one more time, okay?

22  What have you heard are the -- is the factual basis

23  of Officer Thompson's termination?

24       **A.    I don't have any facts.  That would**

25  **be -- that would be -- that's -- under an internal,**

S. STEVEN MAESE v.                                          Travis Kaer
SOUTH JORDAN CITY                                          March 2, 2022

 1   those -- those facts are not given to us.  Facts

 2   are --

 3        Q.   And I understand it might not be

 4   public.  I'm just asking what you've heard.  I'm just

 5   asking what you've heard.

 6        A.   Well, "heard" and "facts" are two

 7   different things.  You're asking me for heard facts.

 8   I don't have any.

 9        Q.   Okay.  Well, what reasons have you

10   heard that Officer Thompson was terminated?

11        A.   It is best to always maintain and give

12   the information that you're being requested for by

13   your superiors.

14        Q.   Okay.  So you're -- so what you heard

15   is that Officer Thompson was not truthful with his

16   superiors?

17        A.   I don't know if it had to do with --

18             MR. YOUNG:  Objection.

19             Hold on, Travis.  Hold on.

20             Misstates the testimony.

21             You can answer.

22        Q.   (BY MR. MAESE)  I'm sorry, Sergeant.  I

23   didn't hear your answer.

24        A.   I don't know what specifics it was.

25   It's -- the generalized thing when people get in

S. STEVEN MAESE v.                                      Travis Kaer
SOUTH JORDAN CITY                                      March 2, 2022

1   trouble in our line of work and they end up losing

2   their jobs is to remind people to own what you do,

3   stay timely with the information requested of you

4   when you -- when it's needed, and communicate with

5   your superiors on situations that you have going on.

6           Q.   All right.

7           A.   The specifics to his -- the facts of

8   his situation, I don't have any.  I haven't even

9   talked to the poor man.

10          Q.   Have you heard of any reason why

11  Officer Thompson was fired?  Yes or no, please.

12          A.   Well, I've heard he's fired, yes.

13          Q.   Have you heard any reason that

14  Officer Thompson was fired?  Yes or no.

15          A.   That he was investigated in a situation

16  that had been going on.  And due to that situation

17  and -- just whatever they had going on, that he was

18  terminated.

19          Q.   Have you heard -- without vouching for

20  the truthfulness of what you heard, have you heard

21  what the situation was?

22          A.   That it had something to do with an

23  injury that he was dealing with.

24          Q.   Okay.  So it was injury-related.  All

25  right.  Perfect.

S. STEVEN MAESE v.                                    Travis Kaer
SOUTH JORDAN CITY                                  March 2, 2022

1          **A.   I don't know.**

2          Q.   No, no.  I get it.  I -- no, I'm not

3   holding this to you as gospel.  I'm not -- I'm not

4   saying that, you know, you are the arbiter of what

5   happened.  I'm just getting that you heard that it

6   was due to an injury.  So . . .

7               MR. YOUNG:  Objection.  Misstates the

8   testimony.

9          Q.   (BY MR. MAESE)  After -- let's go back

10  to the video for a second.  After the video, after

11  you exited my home, did you take any steps to secure

12  the scene for evidence?

13         **A.   If I'm understanding what your question**

14  **is correctly, we held the door.  I kept an officer on**

15  **scene, and we waited until the warrant was ready.**

16         Q.   Okay.  Did you have any hand in

17  drafting the warrant?

18         **A.   No.**

19         Q.   All right.  But you were -- you were

20  the one who decided to do the protective sweep,

21  correct?

22         **A.   Yes.**

23         Q.   And at the time you ordered the

24  protective sweep, you did not mention a thing

25  about evidence or evidence preservation; is that

S. STEVEN MAESE v.                                      Travis Kaer
SOUTH JORDAN CITY                                     March 2, 2022

```
 1   correct?
 2              MR. YOUNG:  Objection.  Vague.
 3              You can answer.
 4        A.   As far as any specifics, not that I
 5   recall.  I don't know.
 6        Q.   (BY MR. MAESE)  Well, you were there.
 7   You were present.  Did you -- did you use the word
 8   "evidence" once before entering the home?
 9        A.    I honestly do not know.  Again, we're
10   back to a case that's two years old.
11        Q.   I understand that, but I have a video
12   recording of you saying, Time to do a sweep, and you
13   don't use the word "evidence" at all.
14              So what you're telling me is, as of
15   today, you don't remember having an evidentiary
16   concern two years ago?
17        A.   Oh, no, I -- I had those concerns, but
18   those were my concerns.
19        Q.   But you -- all right.  A distinction
20   with a slight difference.  You never voiced those
21   concerns to anyone?
22        A.   I don't know if I did or not, because
23   when we have officer-to-officer conversations, those
24   aren't always a recorded fact.
25        Q.   Okay.  Did you document any evidentiary
```

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Travis Kaer
March 2, 2022

```
 1   concerns in your reports?
 2          A.   Not that I recall.
 3          Q.   Okay.  And there was nothing on the
 4   body cam where you talked about evidence; is that
 5   correct?
 6          A.   Again, I don't know.  All I had was my
 7   body cam.
 8          MR. MAESE:  Okay.  All right.  I think
 9   that about does it.  Thank you very much.
10          MR. YOUNG:  Hold on.  I may have a
11   couple questions.  Let's take a two-, three-minute
12   break, okay?
13          MR. MAESE:  Sounds good.
14          MR. YOUNG:  Okay.  Thanks.
15          (Recess from 1:10 p.m. to 1:13 p.m.)
16          MR. MAESE:  And, actually, I do -- I do
17   have one other question that I want to ask.
18          MR. YOUNG:  Why don't you go ahead.
19   I've got, like, two questions.
20          MR. MAESE:  Okay.
21          MR. YOUNG:  So you can finish, and then
22   I'll go.
23          MR. MAESE:  Okay.  Perfect.
24          Q.   (BY MR. MAESE)  Sergeant Kaer --
25          A.   Yes, sir.
```

S. STEVEN MAESE v.
SOUTH JORDAN CITY

Travis Kaer
March 2, 2022

```
 1        Q.   -- have you been disciplined in any
 2   regards to the incident at my home?
 3        A.   No, sir.
 4        Q.   Have you ever been disciplined for any
 5   sort of civil rights violation by South Jordan PD?
 6        A.   No.
 7             MR. YOUNG:  Objection.  Vague.
 8             You can answer.
 9        A.   No.
10        Q.   (BY MR. MAESE)  Are you aware of any
11   other officer who has been disciplined for a civil
12   rights violation?
13             MR. YOUNG:  Same objection.  You can
14   answer.
15        A.   Not that I'm aware of at this moment,
16   no.
17             MR. MAESE:  All right.  That's it.
18   Thank you so much.
19                       EXAMINATION
20   BY MR. YOUNG:
21        Q.   Sergeant Kaer, just a couple of
22   questions.
23             Mr. Maese asked you what you did to
24   secure the home, and you used two phrases, "held the
25   door" and "kept an officer on scene."
```

1          Can you just describe what you meant by

2    those phrases?

3          **A.    Yeah.  I -- I pulled -- we pulled the**

4    **door -- somebody did.  The door was pulled shut.  And**

5    **then there was an officer in his vehicle sitting at**

6    **the bottom of the street directly in front of the**

7    **house to maintain security on the home, to make sure**

8    **nobody else went in through that door.**

9          MR. YOUNG:  Okay.  I don't have

10   anything else.

11         So we'll read and sign, and let's go

12   off the record.

13         WHEREUPON, the foregoing deposition was

14   concluded at the hour of 1:15 p.m. on March 2, 2022.

15         (Exhibit 2 was marked after the

16   conclusion of the deposition.)

17              *    *    *    *

18

19

20

21

22

23

24

25

S. STEVEN MAESE v.                                                    Travis Kaer
SOUTH JORDAN CITY                                                   March 2, 2022

```
1   Case:  Maese v. South Jordan City, et al.
    Date:  March 2, 2022
2   Reporter:  Jill S. Nielsen, Q&A Reporting, Inc.
    1872 South Main Street, Salt Lake City, Utah 84115
3
                    WITNESS CERTIFICATE
4
        I, SERGEANT TRAVIS KAER, HEREBY DECLARE
5   UNDER PENALTY OF PERJURY:  That I am the witness
    referred to in the transcript; that I have read the
6   transcript and know the contents thereof; that with
    these corrections, I have noted this transcript truly
7   and accurately reflects my testimony.

8   PAGE    LINE    CHANGE/CORRECTION           REASON

9   _____   _____   _____

10  _____   _____   _____

11  _____   _____   _____

12  _____   _____   _____

13  _____   _____   _____

14  _____   _____   _____

15  _____   _____   _____

16  _____   _____   _____

17  _____   _____   _____

18    _____    No corrections were made

19

20  Executed on this _____ day of _____, 2022.

21

22

23             _____

24                 SERGEANT TRAVIS KAER

25
```

```
 1                  REPORTER'S CERTIFICATE
 2          I, JILL S. NIELSEN, do hereby certify that I
 3    am a Registered Professional Reporter and Notary
 4    Public; that previous to the commencement of the
 5    examination, the witness was duly sworn by me to
 6    testify to the truth.
 7          I further certify this deposition was taken
 8    in shorthand by me at the time and place herein set
 9    forth, and that it was thereafter reduced to
10    typewritten form, and that the foregoing constitutes
11    a true and correct transcript.
12          I further certify that I am not related to,
13    employed by, nor of counsel for any of the parties or
14    attorneys herein, nor otherwise interested in the
15    result of the within action.
16          IN WITNESS WHEREOF, I have hereunto affixed
17    my hand and seal this 10th day of March, 2022.
18
19          My commission expires July 7, 2023.
20
21
22
23    _____
24    JILL S. NIELSEN, RPR
25
```

**Exhibits**

**Exhibit 2. Kaer**
  3:9,12 26:20 40:15

**0**

**0600**
  30:9

**1**

**1**
  26:4
**10400**
  5:21
**10th**
  42:17
**12**
  26:23
**1:10**
  38:15
**1:13**
  38:15
**1:15**
  40:14

**2**

**2**
  26:20 40:14,15
  41:1
**2019**
  4:15 26:23 29:2,3
**2022**
  40:14 41:1,20
  42:17
**2023**
  42:19
**20:55**
  12:16
**25**
  4:15 20:3 22:20
**28:49**
  23:18
**28:50**
  23:9,12

**28:55**
  25:6

**3**

**30**
  6:16 13:8 30:19
**3892**
  5:1,23

**4**

**4000**
  5:20

**7**

**7**
  42:19
**705**
  12:11 23:9 25:6
  26:4
**708**
  11:13

**8**

**84115**
  41:2
**870**
  26:21
**874**
  27:5
**876**
  26:21

**A**

**ability**
  18:14
**absence**
  15:23
**absolutely**
  33:11
**access**
  11:11,12
**accurately**
  41:7

**accused**
  32:22,23
**action**
  42:15
**actions**
  10:11
**activity**
  8:20,22 10:22 14:5
**address**
  5:18
**affixed**
  42:16
**ahead**
  9:21 18:12 23:21
  33:5 38:18
**amendment**
  21:25 22:12,13
  27:10
**amount**
  19:23
**amounts**
  22:3
**Andrew**
  29:23
**answers**
  16:3 19:15
**apologize**
  9:19
**appears**
  13:16 26:22
**approximately**
  6:14
**arbiter**
  36:4
**arrest**
  14:9
**arrived**
  5:24,25
**articulate**
  19:2
**ascertain**
  32:2
**assigned**
  5:10
**assignment**
  7:17
**attended**
  29:15

**attendees**
  29:6
**attending**
  26:24
**attention**
  24:9
**attorneys**
  42:14
**audio**
  23:16
**awake**
  20:4
**aware**
  21:18 23:3 39:10,
  15

**B**

**back**
  16:11 23:5,8 36:9
  37:10
**baseball**
  25:17
**based**
  19:2
**basic**
  10:11
**basically**
  6:25 7:12
**basis**
  33:22
**bat**
  25:18
**beginning**
  16:15
**behalf**
  9:6
**beliefs**
  21:10
**believed**
  8:7 9:19
**Bills**
  25:11
**bit**
  7:6 9:17 30:4
**body**
  11:4,5,7,14 15:7
  24:11 38:4,7

**bottom**
  12:17 26:12 40:6
**break**
  38:12
**brought**
  14:21
**button**
  26:13

**C**

**calls**
  7:1 15:24 22:8
**cam**
  11:4,5,7,14 24:12
  38:4,7
**cameras**
  15:7
**care**
  15:2 31:16
**case**
  4:25 27:5,8 31:7
  37:10 41:1
**cases**
  4:21,23 28:20
**CERTIFICATE**
  41:3 42:1
**certify**
  42:2,7,12
**chance**
  11:4
**CHANGE/
CORRECTION**
  41:8
**charges**
  27:9
**chief**
  28:16 29:16
**choose**
  26:15
**circumstance**
  22:24 23:2
**circumstances**
  19:3 22:3,16,21
**City**
  4:12 41:1,2
**civil**
  31:12 39:5,11

click
26:14
client
17:16 18:4,8
Coastal
5:1,23
comfortable
21:9
command
20:12 30:1
commanding
13:16
commencement
42:4
comments
28:10
commission
42:19
communicate
35:4
complainant
17:1 19:23
complete
21:8
completed
20:9
Complied
12:23 13:14 23:23
computer
11:19,20,21 26:15
conceive
15:22
concern
37:16
concerned
14:22
concerns
16:15 17:4 18:25
19:1 37:17,18,21
38:1
concluded
40:14
conclusion
15:25 22:9 40:16
conclusions
28:7,8
conduct
14:10 31:16

connected
21:3
conscious
8:14 20:4
consciously
8:15
constitutes
42:10
contact
6:3 19:11
containment
6:2,10
contents
41:6
conversation
21:6,8
conversations
37:23
copy
28:4
corner
12:17
correct
5:25 7:24 9:23
13:17,18 25:20
28:11,22 29:24
36:21 37:1 38:5
42:11
corrections
41:6,18
correctly
29:9 36:14
counsel
42:13
couple
27:18 38:11 39:21
court
18:2 26:7
create
6:10
crime
14:17,22,23 15:3,5,
10 19:9
cue
12:16
curious
31:14
custody

11:3

D

damage
19:8,23 20:1,3,7
darked
6:1
date
10:15 41:1
day
28:4,5 41:20 42:17
days
30:19
dealing
10:12 22:18 35:23
decided
8:8,11,13 36:20
decision
8:14
DECLARE
41:4
deem
8:16
Defendants'
11:13 12:11 25:6
26:21
define
14:2 22:11
definition
20:20,24 21:1
31:22
depending
7:16 28:16
deposition
9:10 40:13,16 42:7
depositions
30:7
depth
32:2
deputy
28:16 29:16
describe
40:1
descriptions
10:25
details
30:24

determination
20:10 21:4
difference
37:20
directly
40:6
discipline
20:16,18 31:10
disciplined
21:12,19 39:1,4,11
discussion
12:7
distinction
37:19
disturb
14:23
disturbed
15:4
division
4:12 28:21
document
7:19 8:2,8,12,16
10:13 15:4 25:24
37:25
documented
7:24 10:4 28:10
domestic
5:9 19:10
door
36:14 39:25 40:4,8
drafting
36:17
drive
5:1,23 30:10
due
16:13 17:4 19:8
27:9 30:25 35:16
36:6
duly
4:3 42:5
Dune
5:1,23
duty
9:23

E

e-mail

30:5
east
6:7
employed
42:13
employment
33:8
end
35:1
English
20:25
enter
20:12 22:4,16,22
23:6
entered
15:14
entering
22:15 37:8
entire
9:10 17:5 22:13
entitled
18:7,12
et al
41:1
evasive
32:3
evening
4:14,18 8:20 9:23
10:19 11:4
evidence
19:19 36:12,25
37:8,13 38:4
evidentiary
37:15,25
examination
4:5 39:19 42:5
examples
31:15
Excuse
10:8
Executed
41:20
exhibit
26:4,20 40:15
exhibits
11:11
exigent
22:3,16,21,24 23:1

exited
    36:11
experience
    19:24
expires
    42:19
expounding
    17:23

**F**

fact
    16:13 37:24
facts
    15:23 32:21 33:24
    34:1,6,7 35:7
factual
    33:11,22
fair
    8:17 14:4 18:3
    21:23 30:21
familiar
    24:16 26:11
feel
    7:21 8:3 21:9
felt
    7:23
file
    11:23
find
    31:8
finish
    9:15 17:13 38:21
finished
    9:19
firearms
    25:16
fired
    35:11,12,14
firmly
    9:19
force
    13:22 14:2
foregoing
    40:13 42:10
Forgive
    26:9
forgotten

10:5
form
    42:10
Foundation
    31:4
Fourth
    21:25 22:12 27:10
frame
    24:5,12 25:3,9
fresh
    22:24
front
    24:10 33:14 40:6

**G**

gave
    33:19
generalities
    32:18
generalized
    34:25
generally
    29:13
give
    23:4 25:22 28:24
    33:15 34:11
glad
    14:20
good
    23:19 38:13
gospel
    36:3
gossip
    31:2,18,22 32:18,
    20,23,24
graves
    29:20 30:2
graveyard
    4:20 30:8,11,14
graveyards
    30:7
great
    26:2,5
group
    12:12
guess
    16:11 29:3 32:1

guessing
    29:9
gun
    27:9
guy
    30:11,14
guys
    9:16

**H**

half
    6:17
hand
    36:16 42:17
handles
    28:19
happen
    11:9,12
happened
    5:4 8:10 20:14
    27:22 36:5
hard
    18:1
He'll
    18:13
head
    27:3
hear
    16:24 34:23
heard
    31:3,19 32:11,13,
    19,24 33:10,13,22
    34:4,5,6,7,10,14
    35:10,12,13,19,20
    36:5
hearsay
    31:5
held
    36:14 39:24
helps
    29:7
hereunto
    42:16
Hey
    9:14
highly
    31:12

hold
    5:6 25:13 29:5 30:6
    34:19 38:10
holding
    36:3
Holiday
    5:18
home
    6:2,25 7:5 10:25
    14:9,16,19 15:14,
    18 16:8,19 17:1,3,
    11 19:7 20:13 22:4,
    15,16,22 23:6
    36:11 37:8 39:2,24
    40:7
homes
    13:24
honest
    7:4 29:4 30:18
    33:14
honestly
    37:9
hope
    21:7
horrendous
    19:10
horrific
    20:5
hour
    6:16 30:10 40:14
house
    6:1,7,24 8:20,22
    10:22 13:17 14:7
    40:7

**I**

identify
    15:5 24:20 25:4
ignorance
    23:1
immense
    19:8
inability
    19:11
incident
    7:13 39:2
indicia
    18:18

individual
    19:12 20:3
inflict
    20:6
inflicted
    19:25
information
    6:13 7:13 17:7
    19:15 32:21 34:12
    35:3
injury
    35:23 36:6
injury-related
    35:24
inside
    6:3 10:25 14:6,18
    16:8
instance
    21:18
instruct
    17:15 18:4,8
instructing
    18:9
insubordinate
    21:16
insubordination
    20:19,21,24 21:1,3,
    13,20
interested
    42:14
internal
    30:25 33:7,25
interrupting
    18:11
investigated
    35:15
investigation
    19:9 20:9 30:25
    33:7
investigations
    19:20 28:14,15,18,
    21
investigators
    15:6
involved
    30:14

**J**

**Jill**
41:2 42:2,24

**job**
7:17

**jobs**
35:2

**Jordan**
4:12 5:1 12:9 21:19
31:9,11 32:14 39:5
41:1

**July**
42:19

**K**

**K-A-E-R**
4:11

**Kaer**
4:2,10 12:25 13:1,2
18:16 23:5,24 25:8
26:24 31:24 38:24
39:21 41:4,24

**kind**
16:12 20:1

**Knight**
29:17

**knowing**
32:7

**knowledge**
32:2

**L**

**Lake**
41:2

**language**
20:25

**large**
11:23

**leading**
19:10

**led**
11:3 16:15 18:24
19:6

**left**
12:17 25:10

**legal**
15:25 22:8 28:7

**lieutenant**
28:14,16,18,25
29:10,11,16

**life**
19:14

**lighting**
7:5

**lights**
7:3 14:6

**limit**
18:17

**limited**
17:14,15

**list**
29:6

**listed**
25:17 26:24

**listing**
25:16

**literal**
31:22

**lives**
15:1,12,13 22:24

**loading**
25:23

**located**
5:20

**long**
6:9,10,11

**longer**
29:25 32:12,14

**lose**
27:9

**losing**
35:1

**lot**
19:15 26:10

**lowest**
19:12

**M**

**made**
14:18 28:9 41:18

**Maese**
4:6 5:11 7:2 9:18,

22 10:10,17 11:18,
23 12:2,5,15,20,22,
24 13:7,11,13,15,22
14:4,20 15:9 16:7,
16,24 17:14,20
18:3,9,15,16 19:1
22:13 23:8,12,15,
19,21,24 24:19,24
25:2,7,8 26:2,5,9,
17,22 27:8 31:8,21
32:6,10,17 33:2,9
34:22 36:9 37:6
38:8,13,16,20,23,24
39:10,17,23 41:1

**Main**
41:2

**maintain**
34:11 40:7

**maintained**
19:19

**major**
27:5 28:20

**make**
6:3 7:1 9:15 13:6
16:4 19:17 20:9
26:3,20 40:7

**makes**
21:4

**making**
31:15

**male**
6:3

**man**
35:9

**March**
40:14 41:1 42:17

**marked**
12:10 40:15

**matter**
13:22 14:2 32:21

**means**
19:13 20:23 31:19

**meant**
40:1

**meeting**
26:23 27:1,12,17,
25 29:16

**memory**
10:15 24:7

**mention**
8:20 36:24

**method**
7:9

**middle**
26:13

**mind**
4:22

**mine**
20:21

**minutes**
6:16 26:23

**Misstates**
34:20 36:7

**moment**
23:4 39:15

**morning**
30:9

**multiple**
19:25

**N**

**needed**
35:4

**Nielsen**
41:2 42:2,24

**night**
4:22,23 10:1 30:9

**normal**
29:18

**Notary**
42:3

**note**
14:5

**noted**
10:22 41:6

**notes**
28:1,4,10

**November**
26:23

**O**

**oath**
33:10

**Object**
13:19

**objection**
5:6 6:22 13:20,25
14:12,24 15:24
16:9,20 22:5 31:4
33:1 34:18 36:7
37:2 39:7,13

**objections**
17:12 18:20 32:15

**objective**
16:18,22 17:2,10
18:18

**objectives**
18:23

**observations**
7:15,20 9:8,12

**observe**
5:12 6:21 8:15,21

**observed**
6:24 8:6,11

**office**
11:10

**officer**
9:6 11:6 21:12,15,
19 24:3,4,8,9,10,11
25:11,15,19 29:23
30:16,23 33:17,23
34:10,15 35:11,14
36:14 39:11,25
40:5

**officer-to-officer**
37:23

**officers**
5:10 6:24 13:16,23
14:10,16 19:18
20:12,18 21:7 24:5
25:3 28:8 30:13

**Oil**
5:18

**one's**
14:15

**open**
21:6,7

**opinion**
21:17

**opportunity**
10:18

**order**
13:23

**ordered**
36:23

---

**P**

---

**p.m.**
38:15 40:14
**paperwork**
33:15
**part**
5:13,17 7:16 14:16
15:5 16:3 22:11
**parties**
42:13
**patrol**
4:12
**pause**
12:22 13:10,13
23:22 24:24
**paying**
24:9
**PD**
21:19 39:5
**PENALTY**
41:5
**Pennington**
29:11,16
**people**
14:18 15:2 18:18
19:25 31:15 34:25
35:2
**Perfect**
4:13 8:19 12:2 13:5
25:12 26:19 29:19
35:25 38:23
**PERJURY**
41:5
**permeate**
31:13
**person**
15:17 17:1 19:25
20:6,7
**personal**
9:8 21:10
**personally**
8:23,24
**pertain**
9:3

**pertinent**
7:17,20,21,23 8:2,
4,7,11,16 10:3
**Phillips**
29:12,14
**phone**
6:3 7:1 19:13
**phrases**
39:24 40:2
**place**
42:8
**play**
12:18
**played**
12:21 13:12 23:14,
20 24:23
**playing**
13:7
**point**
16:15 21:5 24:16
**police**
4:11
**poor**
35:9
**portion**
5:13
**portions**
22:6
**position**
4:8 7:17
**positioned**
6:6
**possibly**
9:7
**practices**
31:9
**present**
24:5,6 37:7
**preservation**
19:13,14 36:25
**preserve**
15:3,10
**Pretty**
16:2
**previous**
42:4
**Professional**
42:3

**protective**
13:23 14:10,17
20:13 27:9 36:20,
24
**public**
14:15 19:18 34:4
42:4
**pull**
11:25
**pulled**
12:10 40:3,4
**pursuit**
22:25
**put**
9:1 10:24 21:8

---

**Q**

---

**Q&a**
41:2
**question**
9:16 14:3 17:16
18:4,6,10,12 36:13
38:17
**questioning**
33:1
**questions**
38:11,19 39:22
**quick**
24:7
**quickly**
29:6

---

**R**

---

**read**
40:11 41:5
**reading**
27:13
**ready**
36:15
**real**
29:6
**realms**
20:22
**reason**
15:16,19,21 16:4,7,
12,19 17:3,10 31:1
32:13 35:10,13

41:8
**reasonable**
8:21
**reasons**
30:6 33:3,11 34:9
**recall**
6:15 7:4 10:1
27:11,17 37:5 38:2
**received**
30:5
**recently**
29:23 30:2
**recess**
38:15
**recollection**
6:15 10:14 26:25
**record**
12:4,6,7,8 25:5
33:10 40:12
**recorded**
37:24
**recording**
37:12
**reduced**
42:9
**referred**
41:5
**reflected**
12:16
**reflects**
41:7
**refused**
20:12,13
**regard**
31:11
**Registered**
42:3
**relate**
31:19
**related**
42:12
**remained**
18:18
**remember**
4:14 5:2 25:18
27:22,23 29:8
37:15

**remembering**
27:19,21
**remind**
35:2
**renew**
10:14
**rephrase**
16:17
**replay**
24:13
**report**
5:5,9 7:10 8:19
10:18,20,23,25
11:1 14:5
**reporter**
10:8 18:2 26:8 41:2
42:3
**REPORTER'S**
42:1
**Reporting**
41:2
**reports**
7:8 38:1
**requested**
34:12 35:3
**requesting**
18:23
**residence**
18:19
**responded**
5:5,9
**result**
42:15
**review**
10:18 11:4 27:5
**reviewed**
11:5,6
**rewind**
24:19 25:2
**rights**
31:12 39:5,12
**road**
6:8
**RPR**
42:24

## S

**safe**
16:6 19:18
**safest**
19:13
**safety**
14:15 21:11
**Salt**
41:2
**save**
15:1
**saving**
15:11,13 22:23
**scene**
5:12,14,16,17
14:17 15:3,5,7 17:5
19:14,19 36:12,15
39:25
**scenes**
14:22,23 15:10
**Scott**
12:9 13:8 23:9
24:19 30:5
**Scott's**
11:10
**screen**
11:17 12:12 26:14,
19
**screens**
26:15
**scroll**
27:4
**seal**
42:17
**search**
22:7
**seconds**
6:16 13:8 24:20
**secure**
16:6 36:11 39:24
**secured**
19:19
**security**
40:7
**send**
11:24

**September**
4:15
**sergeant**
4:2,11,19 9:23 13:2
18:16 23:5,24 25:8
26:24 28:14,18,25
29:11,12,14 31:24
34:22 38:24 39:21
41:4,24
**sergeants**
28:8
**Serrano's**
11:6,13 24:11
**set**
42:8
**setting**
6:2,25
**shadow**
16:25
**shame**
27:21
**share**
11:17 26:1,13,16,
19
**sharing**
12:11
**shift**
4:19,20 30:3,8
**shorthand**
42:8
**show**
11:17 12:12 26:14
31:11,15
**shown**
14:15
**shut**
40:4
**sign**
40:11
**simply**
9:7
**sir**
4:7 6:4 9:24 12:24
13:1 27:3 29:21
32:20 38:25 39:3
**sitting**
40:5
**situation**
7:18 10:11 16:5,14

18:24 22:17 30:25
32:7 35:8,15,16,21
**situations**
10:16 14:14 35:5
**slight**
37:20
**slow**
25:1
**sort**
17:2 39:5
**sounds**
14:6 38:13
**South**
4:12 5:21 12:9
21:19 31:9,11
32:14 39:5 41:1,2
**speak**
9:6 20:25
**speaking**
28:6 29:13
**speaks**
13:20
**specific**
11:21 18:23 19:21
22:17 27:2
**specifically**
8:5,25 10:1 33:16
**specifics**
19:6 28:17 31:25
32:16,18 34:24
35:7 37:4
**spell**
4:8
**spelled**
4:11
**spot**
21:9
**spread**
32:20
**spreading**
32:23
**staff**
26:23 27:25 28:4
**standing**
33:1
**started**
7:1
**starting**

23:18
**state**
4:7
**stated**
33:4
**statement**
8:17
**stay**
33:14 35:3
**steps**
36:11
**Steve**
9:14 11:16 12:18
23:11 26:1,3
**stood**
4:22
**street**
6:8 40:6 41:2
**structure**
7:10
**stuff**
33:14
**subject**
6:4
**suggestion**
32:6
**superior**
21:4
**superiors**
21:7 34:13,16 35:5
**supervisor**
21:4
**sweep**
13:17 14:11,17
20:13 27:10 36:20,
24 37:12
**sweeps**
13:23
**sworn**
4:3 42:5

## T

**Talbot**
24:3,4,8,10 25:11
**Talbot's**
25:15,19
**talk**

18:1,8 31:11
**talked**
27:15 35:9 38:4
**talking**
9:16 27:19
**tangible**
32:21
**taught**
22:2,21
**Teams**
26:10
**telling**
33:9,17 37:14
**ten**
24:20
**terminated**
29:23 30:23 33:8
34:10 35:18
**termination**
33:12,23
**testified**
4:4
**testify**
42:6
**testimony**
34:20 36:8 41:7
**thereof**
41:6
**thing**
6:12 34:25 36:24
**things**
20:5 31:10,13 34:7
**third-party**
17:2
**Thompson**
29:23 30:16,23
32:8,9,11 33:17
34:10,15 35:11,14
**Thompson's**
33:23
**thought**
9:11 11:10,11
**three-minute**
38:11
**time**
6:21 7:21,25 8:4
10:9,15,22 11:2
15:15 29:2,8,10,12

33:21 36:23 37:12
42:8
**timely**
35:3
**times**
8:1,3,6
**tiny**
26:18
**titled**
11:13
**today**
37:15
**told**
22:15 30:23
**tonight**
30:11
**top**
27:2
**totalities**
14:14 16:14 17:5
18:24 19:21
**totality**
19:3,4 20:9 22:20
**totally**
20:21
**trained**
7:7,14,19 9:13
14:22 15:1,10
**training**
7:7 14:21 21:24
22:2,14,19,20
**transcript**
41:5,6 42:11
**Travis**
4:2,10 34:19 41:4,
24
**trial**
10:15
**trouble**
33:7 35:1
**true**
9:9 42:11
**truth**
4:3 33:13 42:6
**truthful**
34:15
**truthfulness**
35:20

**turn**
23:15
**two-**
38:11
**type**
19:9
**types**
28:7
**typewritten**
42:10
**typically**
28:6

---
U
---

**uncooperativeness**
19:11
**underneath**
14:10 30:13
**understand**
14:3 16:23 24:18
29:22 30:2 31:21
32:17 34:3 37:11
**understanding**
18:22 36:13
**understood**
17:6,8
**unit**
28:18
**Utah**
41:2

---
V
---

**vague**
5:7 6:22 13:25
14:24 16:20 19:3,4
22:8 31:23 37:2
39:7
**vantage**
24:16
**vehicle**
40:5
**verified**
14:18
**verify**
19:17
**victim**
19:9

**video**
12:11,21 13:3,12,
20 23:14,16,20
24:23 36:10 37:11
**violation**
27:10 39:5,12
**voice**
16:25 23:25 25:15,
20
**voiced**
37:20
**volume**
23:16
**vouching**
35:19

---
W
---

**waited**
36:15
**wanted**
13:5
**warrant**
22:4,6,22 36:15,17
**ways**
6:8
**Weeks**
24:8 25:11
**West**
5:1,20,23
**whatsoever**
20:16
**wheelhouse**
21:21
**WHEREOF**
42:16
**window**
26:18
**wonderful**
15:7
**word**
37:7,13
**work**
15:2 30:9,11,17
32:20 35:1
**worked**
30:2 32:8
**works**

29:25 32:12
**write**
7:8,12,14
**wrong**
21:2

---
Y
---

**years**
20:3 22:20 27:18,
22 37:10,16
**yes-or-no**
17:18,23
**Young**
5:6 6:22 9:14,21
11:16,22,25 12:3,8,
9,15,23 13:9,14,19,
25 14:12,24 15:24
16:9,20 17:12,17,
25 18:6,11,20 22:5,
8 23:10,13,17,23
24:22 25:1,5,25
26:3,7,12 31:4,18
32:4,15,25 33:3
34:18 36:7 37:2
38:10,14,18,21
39:7,13,20 40:9

---
Z
---

**Zoom**
11:21 26:10