IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| S. STEVEN MAESE,<br><br>     Plaintiff,<br><br>v.<br><br><br>SOUTH JORDAN CITY et al,<br><br>     Defendants. | REPORT & RECOMMENDATION RE:<br>ECF 54 & 64<br>AND<br>ORDER DENYING ECF 65 & 67<br><br>Case No. 2:21-cv-00562-HCN-CMR<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Cecilia M. Romero |

This case is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF 11). Before the court is Defendants South Jordan City, Johnny J. Serrano (Officer Serrano), and Andrew E. Thompson's (Officer Thompson) (collectively, Defendants) Motion for Summary Judgment (Defendants' Motion) (ECF 54). Also before the court is Plaintiff S. Steven Maese's (Plaintiff or Mr. Maese) Cross-Motion for Partial Summary Judgment (Plaintiff's Cross-Motion) (ECF 64) and two related motions: (1) Defendants' Motion to Strike the Cross Motion for Partial Summary Judgment (Motion to Strike) (ECF 65), and (2) Plaintiff's Motion for Extension of Time to file Cross-Motion for Summary Judgment (Motion for Extension) (ECF 67). Having carefully considered the relevant filings, the court finds that oral argument is not necessary and will decide this matter based on the written memoranda. *See* DUCivR 7-1(g). For the reasons herein, the undersigned RECOMMENDS that the court GRANT IN PART and DENY IN PART Defendants' Motion (ECF 54). For the same reasons, the undersigned RECOMMENDS that the court DENY as moot Plaintiff's Cross-Motion (ECF 64). In addition, the court DENIES as moot: (1) Defendants' Motion to Strike (ECF 65) and (2) Plaintiff's Motion for Extension (ECF 67).

1

# I. PROCEDURAL BACKGROUND

Plaintiff initiated this 42 U.S.C. § 1983 action against Defendants on September 27, 2021, bringing constitutional claims stemming from a protective sweep of Mr. Maese's home following his arrest for a domestic altercation (ECF 1 at 3–8). The Complaint asserts five causes of action for violations of Plaintiff's "Fourth and Fourteenth Amendment to the United States Constitution" and the Utah Constitution under § 1983 (*id.*).[1]

The first cause of action stems from the protective sweep and names Officer Serrano, Officer Thompson, and South Jordan City (*id.* at 5). The second cause of action also names Officer Serrano and Officer Thompson under the theory that Officer Thompson's omission of the protective sweep at the time of applying for a search warrant of Mr. Maese's home constituted a violation of the doctrine established by *Franks v. Delaware*, 438 U.S. 154 (1978) (*id.* at 5–6). The third cause of action names the South Jordan Police Department (SJPD) and is based on unknown South Jordan police officers' execution of the "search warrant procured by Officer Thompson" (*id.* at 6). The fourth cause of action also claims a *Franks* violation based on a later application for a "second search warrant to search Maese's home" by an unknown police officer who "deliberately omitted Officer Serrano's search of Maese's home when applying for the second search warrant" (*id.* at 6–7). The fifth cause of action names unknown officers and South Jordan City and stems

---

[1] Neither the Complaint nor Plaintiff's Response specifically address how the Fourteenth Amendment relates to any of Plaintiff's claims. Because the Fourth Amendment provides "an explicit textual source of constitutional protection" for Plaintiff's claims—the protection from unreasonable searches—"that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)); *see also Pfundstein v. Home Depot U.S.A.*, Inc., No. 2:21-CV-00340-BSJ-JCB, 2022 WL 407283, at *8 (D. Utah Feb. 10, 2022) (finding the plaintiff failed to demonstrate any alternative theory for liability under the Fourteenth Amendment). Accordingly, the undersigned does not substantively consider any arguments under the Fourteenth Amendment.

from "unknown South Jordan police officers" executing a search warrant of Mr. Maese's home on September 28, 2019 (*id.* at 7–8).[2]

In a prior Report and Recommendation dated June 15, 2022 (Recommendation) (ECF 50), the undersigned recommended that the court deny Mr. Maese's Motion for Summary Judgment (ECF 13) on the first cause of action against Officer Serrano, reasoning that Mr. Maese "ha[d] not met his burden to show that summary judgment was warranted" (ECF 50 at 7). At the time, Defendants did not file a cross motion for summary judgment. The Recommendation was later fully adopted (ECF 52).

Defendants filed their Motion for Summary Judgment on December 20, 2022 and argue that granting summary judgment is appropriate as "this Court has already ruled that the initial protective sweep was constitutional" and the subsequent two searches were constitutional because they were performed after obtaining search warrants (ECF 54 at 2). Alternatively, Defendants argue they are entitled to qualified immunity because even if there was a constitutional violation, "there is no clear law prohibiting the action by the officers and there is no evidence of a pattern of unconstitutional practices by South Jordan City" (*id.* at 2–3).

After receiving an extension of time (ECF 59), Mr. Maese filed his Opposition on March 3, 2023 (ECF 63). Mr. Maese argues none of the Defendants are entitled to qualified immunity

[2] Plaintiff's Complaint fails to state whether the claims against Officers Serrano and Thompson are in their official or personal capacities. However, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)). Generally, a claim against a governmental entity under § 1983, must identify "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the entity's] officers" causing a violation of a constitutional right. *Myers v. St. George Police Dep't,*, No. 4:20-CV-00113-DN-PK, 2021 WL 4150888, at *10 (D. Utah Sept. 13, 2021), *aff'd sub nom. Myers v. Tufuga*, No. 22-4027, 2023 WL 2054061 (10th Cir. Feb. 17, 2023) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978)). Because the Complaint fails to make any mention of a policy or custom being the driving force behind the asserted constitutional violations, and an action against South Jordan police officers in their official capacities is essentially an action against South Jordan City, the undersigned considers the claims in the Complaint against Officers Serrano and Thompson in their personal capacities only.

(ECF 63 12–15), clearly established law shows Defendants' protective sweep was unconstitutional (*id.* at 18–24), and there were no exigent circumstances that permitted the protective sweep (*id.* at 25–30). Mr. Maese also argues that because the protective sweep was unconstitutional, the subsequent searches by South Jordan police officers constituted *Franks* violations (*id.* at 30).

On March 3, 2023, Mr. Maese filed a Cross-Motion for Partial Summary Judgment (ECF 64). Plaintiff was pro se and in prison at the time the Opposition to Defendants' Motion was originally due (ECF 55). However, Plaintiff was able to get limited legal representation (ECF 57), and the parties were able to stipulate to an extension of time shortly thereafter (ECF 58). The court's order granting this extension allowed additional time for Plaintiff to respond to Defendants' Motion (ECF 59). Through a later motion for extension of time (ECF 67), Plaintiff attempts to file his Cross-Motion (ECF 64) under the prior order granting an extension of time (ECF 59). Defendants filed a Motion to Strike seeking to have Plaintiff's Cross Motion struck as untimely (ECF 65). Plaintiff also filed a Motion for Extension seeking to extend the time to file his Cross-Motion (ECF 67). These Motions are all pending and will be addressed by the court herein.

After receiving an extension to file their reply (ECF 72), Defendants filed their Reply in support of their Motion on March 24, 2023 (ECF 75). Shortly thereafter, Mr. Maese filed an Objection to new evidence in Defendants' Reply (ECF 76). There was no specific response to the Objection, but the court notes Defendants' Reply does address some of the arguments raised.[3]

---

[3] Plaintiff objects to the database entry that Defendants call a "criminal background check" because proper foundation was not laid, and there are questions regarding authenticity (ECF 76). Defendants concede proper foundation was not laid (ECF 75 at 4). The court therefore does not consider the database entry referenced in Defendants' statement of facts paragraph 10 (ECF 54 at 5). Plaintiff also objects to the exhibits attached to Defendants' Reply. While it is not entirely clear if Plaintiff objects to all the exhibits, the court did not rely on any exhibits attached to the Reply.

## II.   <u>FACTUAL BACKGROUND</u>[4]

On September 24, 2019, at approximately 10:37 p.m., Arianna Adame (Ms. Adame) arrived at Mr. Maese's home (ECF 54 at ¶ 1). Upon arriving, Ms. Adame was visibly upset, pounding on the door, and shouting at Mr. Maese to open the door (*id.*). Eventually, Mr. Maese opened the door (ECF 54-1 at 78:10-13). Approximately fourteen minutes later, Ms. Adame was seen running out of Mr. Maese's home (ECF 54 at ¶ 2). Three minutes later, South Jordan police officers responded to a 911 call made by Ms. Adame in which she reported that Mr. Maese was her boyfriend, he was going to kill her, they were just having an argument, and he had hit her (*id.* at ¶¶ 3–4). Officer Serrano was one of the responding officers, and he made initial contact with Ms. Adame at a Holiday gas station (*id.* at ¶ 5). Officer Serrano noted observing "severe swelling around both eyes," "marks around [Ms. Adame's] neck," and "the odor of urine and feces coming from the car" (*id.* at ¶ 6). Officer Serrano then accompanied Ms. Adame to the hospital, where she admitted to hitting Mr. Maese in the face and described Mr. Maese choking her and punching her in the face (*id.* at ¶ 9). During his deposition, Mr. Maese testified and admitted to choking and punching Ms. Adame (*id.* at ¶ 8).

Upon leaving the hospital, Officer Serrano met other South Jordan Police officers at the Holiday gas station (*id.* at ¶ 9). While there, the officers "discussed kind of the tactical plan" before going to Mr. Maese's home (ECF 61 at 13:1-5). A criminal background check revealed that "Mr. Maese had an extensive history of criminal charges, he had an active protective order against him,"

---

[4] The following facts are either undisputed or portrayed in the light most favorable to Mr. Maese. *Scott v. Harris*, 550 U.S. 372, 378 (2007) ("[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" (quoting *United States v. Diebold, Inc.*, 369 U.S. 654 (1962))). Unless otherwise noted, the facts are drawn from Defendants' Motion, Plaintiff's Opposition, and Defendants' Reply (ECF 54, 63, 75).

and he was "known to have firearms and be anti-police" (ECF 23-8 at ¶ 8; ECF 61 at 13:11-14; ECF 23-8 at ¶ 10; ECF 23-3 at ¶ 25).[5]

The officers went to Mr. Maese's home to make contact with Mr. Maese (ECF 54 at ¶ 12). After unsuccessful attempts to reach Mr. Maese by phone, Officer Thompson approached Mr. Maese's front door with Officer Serrano, rang the doorbell several times, and announced, "South Jordan Police. Come to the door" (ECF 23-3 at ¶ 13–15; ECF 60 at 6:6-7). Approximately two minutes later, Mr. Maese came to the door, did not open it, and asked why they were there (ECF 54 at ¶ 13). Officer Thompson told Mr. Maese the officers wanted to talk to him about what had happened that night and were concerned because they knew he had weapons (*id.*). Mr. Maese responded that he did not have weapons (*id.*). Mr. Maese then asked if he was going to be arrested, and Officer Thompson responded, "We need to speak to you before we arrest you" (*id.*). Mr. Maese said he was going to get a shirt and shorts (*id.*). The officers waited away from the door for Mr. Maese to return (*id.*). The officers were unable to see what Mr. Maese was doing inside the home (*id.*). After approximately two minutes, Mr. Maese said something at the door, and Officer Thompson asked Mr. Maese "to hustle up because [Mr. Maese] was making [Officer Thompson] nervous" (*id.*). Mr. Maese cracked open the door and told the officers he did not have any weapons and he had a feeling he was going to jail and was going "to go pee" beforehand (*id.*). Mr. Maese then closed the door, and the officers observed him going back upstairs (*id.*). Approximately one minute later, Mr. Maese came back to the door and exited the home (*id.*). Mr. Maese complied with orders to show his hands and was taken into custody without incident (*id.*).

---

[5] Plaintiff objects to not only the database entry which the court previously explained it did not consider, but also the statement that Sergeant Travis Kear performed a criminal background check of Mr. Maese and learned that he was anti-police and known to have guns (ECF 63 at ¶ 1). Plaintiff, however, fails to submit any evidence challenging the officers' knowledge of Mr. Maese's background. Plaintiff cites to Officer Thompson's deposition testimony that none of the officers had seen weapons, but Defendants do not argue any officer had seen a weapon (ECF 75 at ¶ 1).

Officer Serrano testified that after Mr. Maese was taken into custody, the officers "determined to conduct a protective sweep of the premises to ensure officer safety and to preserve evidence" because they "did not know who, if anyone, was still in the home" because Ms. Adame had only been in the entryway of the home and because "Mr. Maese was known to have firearms and be anti-police" (ECF 54 at ¶ 13b).[6] Sergeant Travis Kear (Sergeant Kear) testified that he "didn't have any reason to believe that there wasn't already" someone in Mr. Maese's home but that he "had concerns there might be due to the totalities of the entire scene" (ECF 62 at 15:13-20 and 16:11-15). He also testified that he thought someone could be in Mr. Maese's home due to the "immense damage done to [the] victim and the type of crime and the investigation of a horrendous domestic leading into the uncooperativeness and inability to be able to contact [Mr. Maese] . . . by phone" and to ensure that "[the] officers are safe, that [the] public is safe, and that the scene is secured and evidence is maintained" (*id.* at 19:8-21). Officer Serrano testified that he did not know if someone was in Mr. Maese's home, but "[t]here's a possibility for people to be there all the time" (ECF 60 at 9:13-15). The protective sweep lasted approximately five minutes and included a search of several rooms and three floors of the home (ECF 54 at ¶ 14; ECF 63 at ¶ 23).

The next morning, on September 25, 2019 at 5:00 a.m., Officer Thompson submitted an affidavit for a search warrant describing the domestic altercation between Mr. Maese and Ms. Adame and stating that the warrant was necessary to "take photographs and/or collect an[y] DNA or bodily fluid left behind" by Ms. Adame (ECF 54 at ¶ 16). Approximately one hour later, Judge Richard McKelvie (Judge McKelvie) issued a search warrant for Mr. Maese's home (*id.* at ¶ 17). Upon executing the warrant, Officers Wendy Barr and Jodi went to Mr. Maese's home, found wet

---

[6] The Motion contains two paragraphs numbered 13 (*see* ECF 54 at 6–7). To avoid confusion, the second paragraph 13 on page 7 of the Motion will be referred to as "13b."

paper towels that could possibly contain urine, took pictures of them, and then took them into evidence (*id.* at ¶ 18).

Two days later, on September 27, 2019 at 4:00 p.m., Officer Patrick Phillips (Officer Phillips) submitted an affidavit for a search warrant of Mr. Maese's person, which was issued at 4:06 p.m. (ECF 54 at ¶¶ 17–18). At 4:29 p.m., Officer Phillips submitted an affidavit for a search warrant of Mr. Maese's home (*id.* at 19). In the affidavit, Officer Phillips stated that during the protective sweep the officers encountered two closets that had firearms in them and a gun safe in the basement of Mr. Maese's home (*id.* at 19). Officer Phillips stated he found an active protective order prohibiting Mr. Maese from possessing firearms (*id.* at 19). Officer Phillips also stated that he reviewed the body worn cameras of the two officers who had conducted the protective sweep, the video showed a shotgun and an AR-15, and the officers in the video verbally warned each other as they observed handguns and AR-15s not in the camera's view (*id.*). At approximately 4:46 p.m., Judge Mckelvie issued the search warrant (*id.* at ¶ 20).

### III.   <u>LEGAL STANDARDS</u>

A court may grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Summary judgment should be denied when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material if "under the substantive law it is essential to the proper disposition of [a] claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). At summary judgment, a court must "view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party." *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010).

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322 (citation omitted).

Section 1983 provides a right of action for anyone who "under color of any statute, ordinance, regulation, custom, or usage," is subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a state or federal actor. 42 U.S.C. § 1983. The primarily rule of § 1983 actions is that "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Brewer v. Davis County*, Case No. 1:15-CV-40 TC, 2020 WL 2840345, at *13 (D. Utah Jun. 1, 2020) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). At summary judgment, the court must grant qualified immunity unless the plaintiff can show "(1) that the defendant violated plaintiff's constitutional rights, and (2) the right at issue was clearly established at the time of the violation." *Dalton v. Town of Silver City*, No. 2:17-CV-01143-WJ-GJF, 2018 WL 5980442, at *1 (D.N.M. Nov. 14, 2018) (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)). A Supreme Court or Tenth Circuit decision on point or the weight of authority from

other courts can clearly establish a right. *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018). This precedent "need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law. '[G]eneral statements of the law' can clearly establish a right for qualified immunity purposes if they apply 'with obvious clarity to the specific conduct in question.'" *Halley*, 902 F.3d at 1149 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

## IV.   DISCUSSION

### A. The Prior Recommendation Did Not Decide the Constitutionality of the Protective Sweep.

Defendants' Motion first argues that under the law of the case doctrine there is no basis to revisit the issue of the protective sweep because the prior Recommendation on Plaintiff's Motion for Summary Judgment (ECF 13) concluded that the protective sweep was constitutional, given that Plaintiff had not met his burden of proof to warrant summary judgment in his favor under the facts and the law provided (ECF 54 at 14–15; ECF 50 at 5). This argument is not supported.

The law of the case doctrine holds that "once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case." *Wessel v. City of Albuquerque*, 463 F.3d 1138, 1143 (10th Cir. 2006) (quoting *Grigsby v. Banhart*, 294 F.3d 1215, 1218 (10th Cir. 2002)). This doctrine is to be applied with good sense and subject to three exceptions: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *Id.* (quoting *Grigsby*, 294 F.3d at 1219, n. 4).

The issues being litigated in Defendants' Motion (ECF 54) and Plaintiff's Motion for Summary Judgment (ECF 13) are not the same. Although the two motions deal with the same claims, the scope of review of the motions is different. Just as the facts presented are viewed in the

light more favorable to Plaintiff in this Motion, they were construed in the light most favorable for Defendants in the last. Additionally, Plaintiff's Motion for Summary Judgment presented an unusual procedural posture in that it was filed before the close of fact discovery, and Defendants did not contemporaneously file a cross-motion for summary judgment asserting the defense of qualified immunity (ECF 50). At any rate, the holding in the prior Recommendation was not a legal conclusion that the protective sweep was constitutional, but rather that Plaintiff had not met his burden at that time to show that summary judgment was warranted in his favor. This determination does not preclude a reasonable jury from ruling in Plaintiff's favor at a later point in litigation. Consequently, the court rejects Defendants' law of case doctrine argument and instead focuses on their qualified immunity arguments.

**B. Summary Judgment Should be Denied as to the First Cause of Action against Officer Serrano.**

The Complaint's first cause of action alleges that Officer Serrano "led several officers into Maese's house for a 'security sweep'" despite having no knowledge of anyone being inside the house, violating Plaintiff's "Fourth and Fourteenth Amendment to the United States Constitution" (ECF 1 at ¶¶ 24, 26). As to this first cause of action, the undersigned finds that Officer Serrano is not entitled to qualified immunity.

Searches and seizures inside a home without a warrant are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978) (quoting *McDonald v. United States*, 335 U.S. 451, 456 (1948)).

As an initial matter, the undersigned notes that Defendants conflate, or fail to properly differentiate, two separate and distinct Fourth Amendment exceptions that allow police officers to conduct warrantless searches. This distinction is significant when determining whether an officer executing a warrantless search violated a person's Fourth Amendment rights. Defendants argue that the "protective sweep" was permissible because of existing exigent circumstances, specifically the need for safety and preservation of evidence at the time of Plaintiff's arrest (ECF 54 at 16–20). Caselaw, however, demonstrates protective sweeps and exigent circumstances are separate warrantless search exceptions that require separate analyses. *See, e.g.*, *United States v. White*, 185 F. Supp. 3d 1295, 1298 (D. Utah 2016) (conducting separate analyses of Fourth Amendment violations for a warrantless search under the exigent circumstances and protective sweep exceptions); *Harris v. Barnes*, No. 19-CV-00572-MEH, 2021 WL 5850891, at *11 (D. Colo. Dec. 8, 2021), *aff'd sub nom. Harris v. City & Cnty. of Denver*, No. 22-1007, 2023 WL 395742 (10th Cir. Jan. 25, 2023) (separating the two exceptions to warrantless searches and considering a "protective sweep" argument at the summary judgment stage separately under exigent circumstances).[7]

It is true that the two exceptions are "theoretically akin." *See Fishbein ex rel. Fishbein v. City Of Glenwood Springs, Colorado*, 469 F.3d 957, 961 (10th Cir. 2006) (citing *United States v. Wicks*, 995 F.2d 964, 970 (10th Cir. 1993)). However, the two exceptions are different in that different circumstances must arise for a warrantless search to be permissible. While the case of *Maryland v. Buie* permits protective sweeps to prevent a surprise attack or to protect officers or

---

[7] The court acknowledges there is some inconsistency in Tenth Circuit caselaw in which the terms for the two exceptions for protective sweeps and exigent circumstances are interchangeably used. *See, e.g., United States v. Cavely*, 318 F.3d 987, 995 (10th Cir. 2003) ("Depending on the circumstances, the exigencies of a situation may make it reasonable for officers to enter a home without a warrant in order to conduct a protective sweep."). However, *White* and *Barnes*, support that the two exceptions require separate analyses when determining whether a warrantless search violated somebody's rights.

third parties from people around the area of the arrest, the exigent circumstances exception requires an emergency with the place to be searched. *Compare Maryland v. Buie*, 494 U.S. 325, 327 (1990), *with United States v. Thomas*, 372 F.3d 1173, 1177 (10th Cir. 2004) (explaining the Supreme Court has recognized several types of exigent circumstances, such as "hot pursuit of fleeing felon," destruction of evidence, to prevent a suspect's escape, or danger to officers/people inside or outside home). The two exceptions are also different from each other in that protective sweeps may not be justified by the preservation of evidence, *see Fishbein*, 469 F.3d at 961 (citing *Buie*, 494 U.S. at 327), but this justification may be permissible under the exception of exigent circumstances, *see United States v. Carr*, 939 F.2d 1442, 1448 (10th Cir. 1991) (listing the factors for the preservation of evidence exigent circumstances exception to apply). Defendants fail to make this distinction clear in their briefing but do address the relevant standard at least as to the exigent circumstances regarding safety. Because the two exceptions for warrantless searches discussed above are distinct, the undersigned addresses the alleged Fourth Amendment violation under each exception.

      *1. The protective sweep violated Plaintiff's Fourth Amendment rights.*

      "A 'protective sweep' is a quick and limited search of premises, incident to arrest and conducted to protect the safety of policy officers or others." *Buie*, 494 U.S. at 327. A warrantless "protective sweep" of a residence may take place incident to an arrest and to ensure officer safety without violating the Fourth Amendment. *Id.* This sweep "is not a full search, but rather a quick, cursory inspection of the premises." *Unites States v. Soria*, 959 F.2d 855, 857 (10th Cir. 1992) (citing *Buie*, 494 U.S. 325). *Buie* permits protective sweeps under two sets of circumstances: (1) when, as a precautionary matter and incident to arrest, officers may "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched," or (2) when specific articulable facts, "taken together with the rational inferences from

those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334.

Under the first circumstance, the search must be "substantially contemporaneous with the arrest and [be] confined to the immediate vicinity of the arrest." *United States v. Bagley*, 877 F.3d 1151, 1155 (10th Cir. 2017) (quoting *Vale v. Louisiana*, 399 U.S. 30, 33 (1970)). Under the second, an officer must have "'specific and articulable facts' supporting an objective belief someone dangerous remains in the house." *Id.* at 1156 (quoting *Buie*, 494 U.S. at 332–34). The deputies conducting the protective sweep must also have "knowledge regarding the potential presence of a third person" for the protective sweep to be permissible under the second scenario. *United States v. Nelson*, 868 F.3d 885, 889 (10th Cir. 2017). A protective sweep "must [also] not be motivated by an intent to arrest or seize evidence." *Fishbein*, 469 F.3d at 961 (citing *Buie*, 494 U.S. at 327).

The first scenario that allows for protective sweeps under *Buie*, holds that a protective sweep can be done as a precautionary matter and incident of arrest "in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334. Defendants' Motion fails to argue that this exception applies in the case at hand, but because Defendants raise qualified immunity, the burden to show a constitutional violation lies on Mr. Maese. The court therefore addresses it below.

In this case, Mr. Maese was arrested outside his home and taken into custody without incident (ECF 54 at ¶ 13). The protective sweep took place after Mr. Maese was taken into custody and extended into in at least three of the residence's floors despite knowledge that Mr. Maese and Ms. Adame had only been in the entryway of the home (ECF 54 at ¶¶ 13, 13b and 14; ECF 63 at ¶ 23). As demonstrated by *Bagley*, a case cited by Mr. Maese, this type of protective sweep goes beyond those permitted under the first *Buie* exception in that it was not incident to arrest, and it

14

exceeded its permissible scope in terms of the area searched. *Bagley*, 877 F.3d at 1153. Under the present set of the facts, the court finds that Mr. Maese has shown he suffered a Fourth Amendment rights violation under the first *Buie* exception and thus Plaintiff has met his burden to meet the first prong of qualified immunity under the first *Buie* exception.

The same outcome holds under the second *Buie* exception. For the second *Buie* exception to apply, an officer must show that articulable facts "taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334. Officer Serrano's own deposition states that he did not know if someone was in the house, and part of his reason for the protective sweep was that there always is "a possibility" for people to be at a suspect's home (ECF 60 at 9:9-15). Because, as Mr. Maese's cited cases show, this reasoning has been rejected by the Tenth Circuit, the undersigned finds that Plaintiff has met his burden of showing a constitutional violation under the first prong of the qualified immunity analysis as to Plaintiff's first cause of action under the second *Buie* exception. *Nelson*, 868 F.3d at 889.

Accordingly, Plaintiff has met his burden under the first prong of qualified immunity by showing a Fourth Amendment violation based on the protective sweep by Officer Serrano.

2. *Plaintiff has shown that his right to be free from an unlawful protective sweep was clearly established at the time of his arrest.*

Defendants argue that even if the protective sweep was unconstitutional, Officer Serrano is entitled to qualified immunity as "Mr. Maese has not carried his burden of proving that the violation was clearly established, and there is no law clearly establishing that Officer's Serrano's conduct was unconstitutional" (ECF 54 at 19–20). Defendants give three reasons as to why Officer Serrano is entitled to qualified immunity: (1) "the Tenth Circuit has not ruled that protective

sweeps in connection with arrests outside the home are per se unreasonable"; (2) *Cavely* and *Soria*[8] show that similar protective sweeps are constitutional; and (3) protective sweeps "to ensure that evidence of [an] assault [is] not destroyed" are justified (*id.* at 20). [9] All three arguments fail.

Plaintiff points to two recent Tenth Circuit decisions arguing that he had a Fourth Amendment right against an unlawful search and the cases clearly established that the performed protective sweep was impermissible (ECF 63 at 12–13). Plaintiff argues he therefore overcomes qualified immunity as to the first cause of action. The first case is *United States v. Bagley*. In *Bagley*, the Tenth Circuit reversed a district court's denial of a motion to suppress evidence after a protective sweep of the entire house "yielded items that allowed law enforcement officials to obtain a search warrant for the entire house." *Bagley*, 877 F.3d at 1152–53. In that case, Bagley was a convicted felon who was named in an arrest warrant for violating the terms of his supervised release. *Id.* at 1153. Deputy U.S. Marshals there had a search warrant permitting entrance to the house solely to locate Bagley, who was allegedly in the southeast bedroom of the home, but "eventually surrendered and was handcuffed near the front door." *Id.* at 1153. A protective sweep was then conducted of the entire house, and in the southeast bedroom the deputy marshals found two rounds of ammunition and a substance appearing to be marijuana. *Id.*

The Tenth Circuit held that the officers had gone "beyond the limits imposed by our precedents" under both *Buie* circumstances when executing the protective sweep following the arrest. *Id.* Under the first circumstance, the court emphasized that a protective sweep is permissible

---

[8] It is unclear why Defendants' Motion discusses *Cavely* and *Soria* under the exigent circumstances exception to warrantless searches when the relevant search in each case was analyzed under the *Buie* framework. *See United States v. Cavely*, 318 F.3d 987, 994–96 (10th Cir. 2003); *United States v. Soria*, 959 F.2d 855, 857 (1992). As explained above, these two exceptions require separate analysis. Nevertheless, the undersigned considers *Cavely* and *Soria* under the *Buie* framework.

[9] In support of the protective sweep exception, Defendants cite to cases discussing the exigent circumstance permitting warrantless searches relating to the preservation of evidence and not the *Buie* framework (ECF 54 at 19). Defendants, however, failed to address the relevant factors as to the preservation of evidence exigent exception. *See Carr*, 939 F.2d at 1448. Because the argument is not properly briefed, the undersigned does not consider this argument.

"only if the protective sweep was justified at the time of the arrest" and that "the deputy marshals could not conduct the arrest and later conduct a protective sweep based on an earlier arrest somewhere in the house." *Id.* at 1155. The court noted the gaps in the relevant information as to whether Bagley was inside or outside the house when the sweep began. *Id.* at 1154. Notwithstanding, the court concluded that because the sweep extended outside of where Bagley was ultimately arrested near the front door, "*Buie's* first situation would probably not allow a protective sweep in the southeast bedroom" if Bagley was outside the house. *Id.* at 1154. The court also rejected the government's argument that the sweep would fit under the second *Buie* circumstance because the officers lacked an objective belief that someone dangerous remained in the house. *Id.* at 1156. Citing to another Tenth Circuit case, *Nelson*, the court noted "lack of knowledge [if someone is in the house] cannot constitute the specific, articulable facts required by *Buie*." *Id.* at 1156 (citing *Nelson*, 868 F.3d at 889).

In *Nelson*, the Tenth Circuit vacated the district court's denial of a defendant's motion to suppress evidence that was found at the residence where the defendant was staying during a protective sweep after the defendant was arrested. *Nelson*, 868 F.3d at 887. Nelson was serving a term of supervised release and when he failed to comply with conditions, a search warrant was authorized. *Id.* at 887. There, the officers learned that Nelson occasionally stayed at a house owned by Antonio Bradley (Bradley) who gave the officers permission to "'go inside and search for'" Nelson at a time Nelson was in the house. *Id.* at 887–88. When the deputies arrived at Bradley's house, Allie, Bradley's daughter, opened the door. *Id.* at 888. She attempted to retrieve Nelson herself and shut the door on the deputies, but the deputies prevented her from doing so and entered the house. *Id.* Bradley's house consisted of four floors, and the deputies started on the third level and moved their way up to fourth, "where Allie asserted Nelson was located." *Id.* While the

deputies cleared the third and fourth floors of the house, Allie was escorted to the second floor by other deputies so that she could retrieve her child. *Id.* The officers then noticed movement on the first floor, and after commanding the "unidentified person to come out and show his hands . . . Nelson came around the corner with his hands in the air." *Id.* The arresting officers proceeded by placing Nelson into custody on the second floor. *Id.* After Nelson was placed in custody, one of the deputies went down to first floor, where he found two firearms, the evidence Nelson sought to suppress. *Id.*

The district court concluded that the officer's protective sweep was proper under the second circumstance of *Buie* because "the deputies could have reasonably believed that 'someone else [aside from Nelson] was in the house who could pose a danger to the [deputies] or others.'" *Id.* at 889. According to the district court, Allie's attempt to shut the door, Allie incorrectly informing the officers of Nelson's location within the residence, and Nelson's failure to immediately show himself upon the officer's command supported a reasonable belief that someone else was in the house. *Id.* The Tenth Circuit disagreed. It reasoned that "the searching officer had no basis to reasonably believe that an unknown, dangerous person was hiding in the residence" and vacated the denial. *Id.* at 887. The Tenth Circuit emphasized the officers' need "to articulate specific facts giving rise to the inference of a dangerous third person's presence" and that a fallback position that "officers had no way of knowing if anyone else was in the residence" was not enough. *Id.* at 889 (internal quotations omitted). Thus, even though there were other people in the house at the time of the arrest, and Nelson was initially spotted in a different place than where he was arrested, the protective sweep violated Nelson's Fourth Amendment rights.

Both *Bagley* and *Nelson* are relevant to the facts in the present Motion and support the undersigned's recommendation that Plaintiff has met his burden in showing that his right to be

free from unlawful protective sweeps under the present set of facts was clearly established at the time of the warrantless search.

To begin, the incident for which Mr. Maese was arrested took place on September 24, 2019, at approximately 10:37 p.m. (ECF 54 at 1). That same night, Officer Serrano and other officers executed the protective sweep. The two closest cases to Mr. Maese's case, *Nelson* and *Bagley*, both were decided in 2017. Thus, these cases were available to the officers at the time of Mr. Maese's arrest.

Secondly, as understood by the undersigned, Plaintiff is asserting a clearly established right to be free from a protective sweep of several floors of his home where the officers had no objective knowledge or articulable facts that anyone else was in the house after he surrendered outside his home for his arrest and had been taken into custody (ECF 1 at 5). This right was clearly established in *Nelson*, when the Tenth Circuit held that "if the deputies ha[ve] no knowledge regarding the potential presence of a third person, then the government is per se unable to make the affirmative showing the *Buie* requires." 868 F.3d at 889. Construing the facts in the light most favorable to Plaintiff, nothing in the record shows that Officer Serrano had any objective knowledge regarding the potential presence of a third person prior to participating in the protective sweep. This lack of knowledge was confirmed by Officer Serrano's testimony testified that he did not know if someone was in Mr. Maese's home, but "[t]here's a possibility for people to be there all the time" (ECF 60 at 10:13-15; 11:1). Thus, although there are cases that allow protective sweeps in connection with arrests outside the home, as Defendants' Motion argues, this interpretation of the protective sweep analysis ignores the requirements of each *Buie* circumstance. The focus of each circumstance under *Buie* does not necessarily turn on Mr. Maese being arrested outside the home, but rather

whether the search was permissible in scope to prevent an attack or whether the officers had articulable facts of a person being inside the home to justify the warrantless search.

The cases Defendants cite to are not factually analogous and do not demonstrate the right was not clearly established. *Cavely* involved the search of the appellant's home upon issuance of an arrest warrant "based on evidence of methamphetamine previously found at the house." *Cavely*, 318 F.3d at 994. Upon arriving at the hours, the four officers making the arrest split up around the house, two in the front and two in the back. *Id.* The two officers in the front knocked on the front door several times to no avail. *Id.* One of the officers in the back saw the appellant coming out of the back door walking towards a detached garage, "carrying two cans of Coleman fuel, a product sometimes used to manufacture methamphetamine." *Id.* The officers then arrested him "on the driveway outside of the back door of the residence," and searched him finding cash and methamphetamine on his person. *Id.* When asked if anyone else was in the house, the appellant stated that a friend of his was inside the house, and that if the officers "holler[ed]," he would come out. *Id.* The officers then entered the house through the back door, announced themselves, and received no response. *Id.* Upon entering, the officers could also smell an odor and spotted other evidence "associated with the manufacture of methamphetamine." *Id.* at 995. Proceeding with the search of the house, the officers found the appellant's friend in the living room. *Id.* The officers then went through each room in the house and saw additional incriminating evidence but found no one else in the house. *Id.*

The officers there "testified that they conducted the sweep out of concern for their safety." *Id.* The appellant argued that the protective sweep was impermissible "because a 'protective sweep' is limited to arrests occurring inside a home and because the officers' entry into the house was merely a pretext to search for drugs." *Id.* The Tenth Circuit, however, disagreed with the

appellant. The Tenth Circuit held that "[t]he evidence showed specific facts that would warrant a reasonable officer to believe that appellant's home harbored an individual posing a danger to the officers or other on the arrest scene." *Id.* at 996. In concluding that "this search was reasonable under the Fourth Amendment," the court pointed to the following facts: the officer's "clear indication of on-going methamphetamine production" in the house, the appellant had a large amount of cash and methamphetamine on him at the time of the arrest, the "appellant had just come out of the house carrying an explosive fuel sometimes used to manufacture methamphetamine," the appellant admitted a friend was in the house, the friend did not respond when the officers knocked on the door, the officers knew "that firearms had been found in the house during a prior search," the officers did not enter the house "merely" to collect evidence, and the officers at the back door were in a vulnerable position to an attack from inside the house. *Id.*

In this case, Defendants argue that officers were concerned for their safety because they "had compelling evidence of a violent assault." Defendants, however, fail to engage in any meaningful analysis as to how this is relevant to the particular circumstances of the protective sweep, or how it supports their argument as to either of the relevant applicable standards for the officers to execute a warrantless search. Moreover, it is not immediately apparent how this supports Defendants' position because it is undisputed that Ms. Adame was not in the home at the time of the arrest, and her safety therefore cannot be a justification for the protective sweep. If their argument hangs on the safety of the officers, it is undisputed that Mr. Maese had already been taken into custody and therefore no longer posed a threat to the officers conducting the protective sweep. The threat of someone else being inside Mr. Maese's home is also unsubstantiated because the officers testified they had no reason to believe anyone else was inside the home (ECF 62 at

15:13-20; ECF 60 at 9:13-15). Without further explanation by Defendants, the undersigned cannot find that this assertion is dispositive or relevant to this case.

Officer Serrano testified that the officers were told Plaintiff was "known" to have weapons (ECF 54 at ¶ 13b). This is different than the officers having actual knowledge of Plaintiff possessing weapons at the time of the arrest. In *Cavely*, for example, the officers had actual knowledge that the appellant had weapons because they had found them in during a prior search. The record here contains evidence showing that no weapons had been seen in the property prior to the arrest (ECF 61 at 16: 21-23). Further, even assuming the officers "knew" Plaintiff had weapons, it is difficult for the undersigned to understand how these weapons would have posed a threat to the officers or justified this warrantless search. Plaintiff had already been taken into custody at the time of the search, and unlike *Cavely*, none of the officers had knowledge that somebody else remained in Mr. Maese's home. The factual scenarios of these cases are simply not the same.

*Cavely* suggests that a justifiable safety concern for officers is being outside the home in a vulnerable position of attack from the inside of the house. However, in *Cavely*, the threat was present from the officers' knowledge of another person being inside the house. Here, in contrast, Officer Serrano testified that such knowledge was not present at the time of the sweep. This analysis also goes in hand with the assertion that the officers had no reason to believe Mr. Maese's home was empty. Even assuming the officers were concerned by an attack from inside the home, the standard under the second *Buie* exception requires objective knowledge or articulable facts that someone is in the house. *Buie*, 494 U.S. at 334. It is clearly established that the mere possibility of someone being in the house is not enough. *Nelson*, 868 F.3d at 889. Accordingly, *Cavely* is distinguishable from the present facts.

Lastly, Officer Serrano asserts the protective sweep was not merely to procure evidence and Mr. Maese going upstairs twice and ignoring orders to come out of the home heightened the concern of a hidden attack. The record evidence does not support that Mr. Maese ignored orders. Moreover, Officer Serrano does not offer any more evidence or analysis to show these facts justify the protective sweep. A protective sweep is not justified to collect evidence, and the record here shows that the preservation of evidence was at least a consideration behind the sweep (ECF 54 at 13b). Moreover, even if Mr. Maese going up and down the stairs was of concern, nothing else in the record suggests that a threat remained after the arrest took place. Mr. Maese explained what he was doing when making those trips (using the restroom), and at no time was ordered not to do so (*see* ECF 23-3 ¶¶ 16–24). As explained above, Officer Serrano had no knowledge of someone being in Mr. Maese's home, while the officers in *Cavely* knew that another person was still inside the house. For these reasons, Defendants' reliance on *Cavely* is unpersuasive.

Defendants' reliance on *Soria* is also misplaced. In *Soria*, the Tenth Circuit affirmed the denial of a motion to suppress following a protective sweep of an auto body shop after the defendant who operated the body shop was arrested outside, but near, its premises. *Soria*, 959 F.2d at 856–57. That case involved Soria and another person who together were jointly charged. *Id.* at 856. Through the help of an informant, Soria was arrested delivering to the informant a box containing cocaine. *Id.* at 856. Soria was arrested "a short distance from" the body shop. *Id.* at 856. The police then entered the body shop without a warrant to conduct a "protective sweep" to ensure that "any incriminating evidence inside the shop would not be destroyed" and to protect the officers "from possible gunshot fire from within." *Id.* at 856–57. The court considered relevant that the officers "had reason to believe that" the body shop was being used for drug distribution. *Id.* at 857. Upon conducting the protective sweep, the officers also found one person in the shop. *Id.*

23

Although *Soria* seems to be more akin to the case at hand as there was no clear indication that someone was inside the shop, the place searched was commercial in nature, and the scheme for the drug offense for which the defendant was arrested involved more people than just Soria, giving the officers at least articulable facts to support that someone else could have been inside. Even if there are some similarities to *Soria*, the present case is different in that the officers arresting Mr. Maese, specifically Officer Serrano, had no articulable reason to believe someone else was in the house, and also have not stated an objective belief that someone dangerous remained in the house. *Bagley*, 877 F.3d at 1156. Accordingly, Plaintiff has met his burden to overcome the two prongs of qualified immunity as to his first cause of action against Officer Serrano and summary judgment should be denied.

> 3. *Officer Serrano's Argument that Exigent Circumstances Apply in this Case is Unpersuasive.*

Officer Serrano argues that exigent circumstances applied to the warrantless search, making the search constitutional. The court is not persuaded summary judgment should be granted to Officer Serrano under this exception to a warrantless search.

The "exigent circumstances" exception to warrantless entry can apply when the circumstances pose a significant risk to the safety of a police officer or a third party. *See United States v. Thomas*, 372 F.3d 1173, 1177 (10th Cir. 2004). The court looks at three factors to determine if this safety exception to a warrantless entry to applies: "(1) the officers must have reasonable grounds to believe that there is an immediate need to protect the lives or safety of themselves or others; (2) the search must not be motivated by an intent to arrest or seize evidence; and (3) there must be some reasonable basis, approaching probable cause, to associate the emergency with the place to be searched." *Id.*

a. <u>Safety</u>

Defendants argue they meet the first factor under the exigent circumstances exception because: (1) Ms. Adame presented with serious physical injuries, (2) Mr. Maese had an outstanding protective order prohibiting him from possessing firearms, (3) "the criminal background check showed Mr. Maese had a significant criminal history, he was anti-police, and he possessed firearms," (4) "Mr. Maese ignored orders to come out of the home twice and retreated into the home for some time" giving him time to destroy evidence or plan an attack, and (5) Mr. Maese stated he did not possess any weapons (ECF 54 at 16).

Although Ms. Adame had serious injuries, this alone does not present a threat to the officers or others at the scene, especially because the search occurred *after* Mr. Maese was taken into custody and the officers at the scene lacked knowledge of anyone else being in or around the home at the time the protective sweep was executed. Ms. Adame herself was also no longer at Mr. Maese's home. The other facts Defendants raise can be seen to present serious dangers to officers under certain circumstances, but the fact that the search happened, again, *after* Mr. Maese was taken into custody discounts this argument. The potential for destruction of evidence also weighs against Officer Serrano as Defendants' Motion argues and the record itself supports that preserving evidence was part of the reasoning for the sweep.

b. <u>Seizing Evidence</u>

Defendants argue the second factor is met because the search was not motivated to seize evidence, among other factors (ECF 54 at 16–17). This assertion is directly contradicted by Officer Serrano's testimony (*id.* at ¶ 13b). Officer Serrano testified that the preservation of evidence was one of the reasons for why he and the other officers executed the protective sweep (ECF 54 at ¶ 13). The officers may have not seized evidence during the protective sweep, but part of the

motivation behind the protective sweep was undisputedly the preservation of evidence (*id.* at ¶ 13b). Defendants argue that the sweep was to confirm no one was hiding or injured (*id.* at 17). But cite to no evidence to substantiate this assertion.

Moreover, the preservation of evidence is not a permissible ground to execute a protective sweep. *Fishbein*, 469 F.3d at 961 (citing *Buie*, 494 U.S. at 326). Even looking at the preservation of evidence independently, it is unclear how the need to preserve evidence could arise when Mr. Maese had already been taken into custody and the officers that conducted the protective sweep had no knowledge that anyone else was in Mr. Maese's house who could destroy evidence.

    c.   Reasonable Basis

As to the third factor, Defendants argue there was reasonable basis for the search because "there was probable cause to believe Mr. Maese assaulted Ms. Adame and that there was physical evidence of the assault in Mr. Maese's home" (ECF 54 at 17). However, the preservation of evidence cannot motivate the search under this exception, and it is unclear what emergency the officers were attending to given that Ms. Adame was no longer at the house and Mr. Maese had been taken into custody prior to the search. The undersigned finds that this argument is not adequately briefed and declines to sift through the record to find support for this argument.[10]

Accordingly, the court finds that Officer Serrano has failed to meet his burden necessary for this court to grant summary judgment in his favor as to the safety exigent circumstance.

## C. Summary Judgment Should be Granted as to the Second Cause of Action Against Officer Thompson Because Plaintiff has Failed to Show a Constitutional Violation.

Plaintiff asserts a violation of his Fourth Amendment rights under the doctrine established by *Franks v. Delaware*, 438 U.S. 154 (1978). Plaintiff specifically alleges that a *Franks* violation

---

[10] *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 n.6 (10th Cir. 2000) (declining to "search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury" (quoting *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992))).

occurred when Officer Thompson omitted information on the protective sweep when he applied for a search warrant of Mr. Maese's home following Mr. Maese's arrest (ECF 1 at 29–32). Plaintiff's Opposition also argues that the "officers recklessly omitted the material fact that they had probable cause to charge [Ms.] Adame" with a second-degree felony and that had this not been omitted, it "would have affected the issuance of the warrant" (ECF 63 at 30). The court addresses both arguments in turn.

"Under *Franks*, a Fourth Amendment violation occurs if (1) an officer's affidavit supporting a search warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued." *United States v. Herrera*, 782 F.3d 571, 573 (10th Cir. 2015) (citing *Franks*, 438 U.S. at 155–56). To meet this standard, Plaintiff has the burden to establish by a preponderance of the evidence "that the false statement was included [or omitted] in the affidavit by the affiant 'knowingly and intentionally, or with reckless disregard for the truth.'" *United States v. Troxel*, 564 F. Supp. 2d 1235, 1243–44 (D. Kan. 2008) (quoting *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997)). Plaintiff must also prove that "the false statement was necessary to the finding of probable cause." *Id.* (quoting *Kennedy*, 131 F.3d at 1376).

The first search warrant application for Plaintiff's home, as submitted by Officer Thompson, does not mention that certain officers conducted a protective sweep of Mr. Maese's residence (*see* ECF 54-2). The undersigned, closely looking at Officer Thompson's testimony and the record evidence, however, cannot conclude that when preparing the search warrant application, Officer Thompson "knowingly and intentionally, or with reckless disregard for the truth" omitted the fact that certain officers conducted a protective sweep. *See Troxel*, 564 F. Supp. 2d at 1243–44. This is partly because "Officer Thompson testified on March 2, 2022 that '[he] took [Maese]

into custody and left (the scene) before the officers even made that decision to do the protective sweep" (ECF 63 at ¶ 12). Officer Thompson also stated that he could not recall when he received notice that certain officers had conducted a protective sweep in Mr. Maese's home (ECF 61 at 36–9). The record does not establish that Officer Thompson had knowledge of the protective sweep at the time he applied for the relevant search warrant. Lacking any other indication from the record, the court finds that no reasonable jury could find that Plaintiff has met his burden of establish the first component of a *Franks* violation.

However, even assuming Officer Thompson did know of the protective sweep, and knowingly and intentionally, or recklessly chose to omit it from the application, the court cannot find that a reasonable jury would find that Plaintiff can meet the second *Franks* component. Looking at the affidavit for search warrant, the search warrant was concerned with obtaining photographs of the crime scene and collecting any DNA evidence or bodily fluid left behind by Ms. Adame (ECF 54-2 at 4). As Officer Thompson stated in the application, Ms. Adame had testified that Mr. Maese had punched and choked her to the point that she "defecated and urinated herself" (*id.*). It is undisputed that Ms. Adame was punched and choked and Mr. Maese had been taken into custody. These facts, along with the undisputed fact that the altercation between Mr. Maese and Ms. Adame took place, constitutes enough probable cause for an independent judge to issue a search warrant of Mr. Maese's home to obtain evidence regarding the domestic altercation between Mr. Maese and Ms. Adame.

Plaintiff's second argument regarding the omission of Ms. Adame's charges is also unavailing. Again, even assuming that omitting this information was done knowingly and intentionally, or with reckless disregard for the truth, Plaintiff cannot meet his burden that the warrant would not have been issued but for the omission. First, Plaintiff does not offer any legal

basis as to how this omission could impact the issuance of the warrant under these circumstances. Moreover, just like in the first argument, the undisputed facts that Mr. Maese and Ms. Adame had an altercation in which Mr. Maese punched and choked Ms. Adame and that Mr. Maese had been charged with aggravated assault, constitute independent probable cause for the judge to issue a warrant for the purposes of obtaining photographs of the crime scene and collecting any DNA evidence or bodily fluid left behind by the victim (ECF 54-2 at 4).

Accordingly, the undersigned finds that no reasonable jury could find that Plaintiff has met his burden to establish a *Franks* violation as to the search warrant application by Officer Thompson on September 25, 2019. Plaintiff has therefore failed to meet his burden of alleging a violation of his constitutional right under the first prong on the qualified immunity test. While the court need not address the second prong under the qualified immunity standard, the court notes that Plaintiff failed to offer any cases to demonstrate a clearly established right. The undersigned therefore RECOMMENDS that the court grant summary judgment in favor of Officer Thompson as to the second cause of action.

**D.  Summary Judgment Should be Granted as to Claims in which Plaintiff Fails to Assert Personal Involvement by Defendants.**

All of Plaintiff's claims are brought under 42 U.S.C. § 1983. As previously stated, the primarily rule of § 1983 actions is "'[i]ndividual liability under § 1983 must be based on *personal involvement* in the alleged constitutional violation.'" *Smith*, 678 F. Supp. 2d at 1166. Several causes of action in Plaintiff's Complaint name multiple Defendants but fail to attribute any personal involvement in the alleged constitutional violations suffered by Plaintiff. This is the case as to Officer Serrano under Plaintiff's second cause of action and Officer Thompson under the first and third causes of action. Because Plaintiff fails to attribute any personal involvement by Officers

Serrano and Thompson in the alleged constitutional violations under these causes of action, they are entitled to summary judgment as a matter of law on these claims.

### E. Summary Judgment Should be Granted as to Claims Against Unknown Officers.

The third, fourth, and fifth causes of action assert conduct in violation of Plaintiff's constitutional rights against Unknown Defendants. To the extent that a claim is being made against such unknown officers, and even if the identity of such officer was produced in discovery, Plaintiff "cannot defeat summary judgment by relying on the naming of a John or Jane Doe defendant." *Peterson v. Adams*, No. 216CV00775RJSPMW, 2018 WL 4627089, at *15 (D. Utah Sept. 7, 2018), *report and recommendation adopted,* No. 216CV00775RJSPMW, 2018 WL 4621760 (D. Utah Sept. 26, 2018) (dismissing an Eighth Amendment claim for failing to "name the specific individual that allegedly violated their rights").

The undersigned therefore RECOMMENDS that the court grant summary judgment as to the third, fourth and fifth causes of action against the unknown officers.

### F. Summary Judgment Should be Granted as to Claims Against South Jordan City.

The Supreme Court has stated that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Instead, to state a claim for municipal liability under § 1983 for the actions of a municipal employee, a party must allege sufficient facts identifying "a government's policy or custom" that caused the alleged injury. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (citing *Monell*, 436 U.S. at 691–92). Plaintiff therefore has the burden to demonstrate it is plausible "that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider*, 717 F.3d at 769.

Defendant South Jordan City is named in Plaintiff's first, third, and fifth causes of action. However, none of these causes of action tie South Jordan City to the conduct that Plaintiff claims violated his rights. The deadline to file a motion to amend pleading was on March 21, 2022 (ECF 12). Plaintiff did not move to make any amendments to assert municipal liability claims, and the time to do so has now expired. Plaintiff's Opposition to the Motion does state that South Jordan City has a policy and custom of using preservation of evidence as a justification for a protective sweep and a policy and custom of using an illegitimate police database (ECF 63 at 13). But these claims are not set forth in the Complaint. Because the "complaint does not include any such claims," Plaintiff has not met his "summary judgment burden of establishing" a South Jordan City "policy, pattern or practice" was the moving force behind the protective sweep. *See Wood v. Farmington City*, No. 2:10-CV-933-DN-BCW, 2013 WL 12425804, at *8 (D. Utah Sept. 26, 2013) (dismissing *Monell* claims argued in the opposition to a motion for summary judgment because "'the amended complaint d[id] not include any such claims'").

The undersigned therefore RECOMMENDS that summary judgment be granted in favor of South Jordan City as to the first, third and fifth causes of action.

**G. Summary Judgment in Favor of Defendants is Proper for All State Law Claims.**

All of the causes of action in the Complaint are brought under Article 1, Section 14 of the Utah Constitution. Neither the Complaint nor Plaintiff's Opposition develop this argument or address why summary judgment should not be granted as to these claims. Defendants argue they are entitled to summary judgment on these claims because Plaintiff's Fourth Amendment claims fail, and "Article I Section 14 of the Utah Constitution does not provide broader protections than the Fourth Amendment" (ECF 54 at 21). Alternatively, Defendants argue Plaintiff's state law

claims fail under the three elements required proceed with a private suit for damages as set out by *Spackman ex rel. Spackman v. Bd. Of Educ.*, 16 P.3d 533, 538–39 (Utah 2000).

The undersigned does not address Defendants' arguments and instead RECOMMENDS that the court grant summary judgment as to Plaintiff's state constitutional claims due to Plaintiff's failure to address Defendants' arguments. *See Warming Trends, LLC v. Stone*, No. 19-CV-03027-PAB-STV, 2023 WL 2716652, at *17 (D. Colo. Mar. 30, 2023) ("A plaintiff's failure to address a claim in a response to a motion for summary judgment is proper grounds to grant summary judgment in the defendant's favor."); *see also Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768–69 (10th Cir. 2001) (affirming a district court's holding granting summary judgment in favor of defendants after plaintiff failed to address the claim in his response to the summary judgment motion).

## V.    RECOMMENDATION

The undersigned RECOMMENDS that the court rule on Defendants' Motion for Summary Judgment (ECF 54) as follows:

1. DENY summary judgment as to the first cause of action against Officer Serrano;

2. GRANT summary judgment in favor of Officer Thompson and South Jordan City as to the first cause of action; and

3. GRANT summary judgment in favor of Defendants as to the remaining four causes of action.

In light of this recommendation, and in the interest of judicial economy, the undersigned further RECOMMENDS that the court DENY AS MOOT Plaintiff's Cross Motion for Summary Judgment (ECF 64).

## VI.   <u>ORDER</u>

In addition, for the reasons noted above, the court hereby ORDERS as follows:

1. DENY AS MOOT Defendants' Motion to Strike (ECF 65); and

2. DENY AS MOOT Plaintiff's Motion for Extension of Time (ECF 67).

## VII.   <u>NOTICE</u>

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within fourteen (14) days of being served with a copy, any party may serve and file written objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 22 August 2023.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah